**Gabriel PAESE, et al., Plaintiffs,**

v.

**NEW YORK SEVEN–UP BOTTLING COMPANY, INC. and Soft Drink & Brewery Workers Union, Local 812, IBT, Defendants.**

No. 92 Civ. 1409 (SS).

United States District Court,
S.D. New York.

Aug. 25, 1994.

Robert L. Ferris, New York City, for plaintiffs.

Shapiro, Shiff, Beilly, Rosenberg & Fox (Barry Levy, Robert H. Alpert of counsel), New York City, for defendants.

### OPINION AND ORDER

SOTOMAYOR, District Judge.

Pursuant to Fed.R.Civ.P. 11, defendant Soft Drink and Brewery Workers Union, Local 812 ("Local 812") moves for a sanctions award of attorneys' fees and costs against plaintiffs' counsel in this action, Robert L. Ferris. At trial, Ferris failed to present any evidence of causation, an essential element of plaintiffs' breach of fair representation claims under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (the "LMRA"). This complete proof failure, Local 812 maintains, manifests the baselessness of plaintiffs' lawsuit as well as the appropriateness of Rule 11 sanctions against Ferris for his signing and filing of the complaint, the Findings of Fact and Conclusions of Law ("FOF") and the Joint Consolidated Pre-Trial Order ("JPTO"). Ferris' unexplained failure to proffer any proof of causation at

trial makes his signing of the FOF and JPTO objectively unreasonable, and defendant's motion is, therefore, **GRANTED.**

### BACKGROUND

On October 24, 1991, New York Seven–Up Bottling Company, Inc. ("Seven–Up") closed its Bronx, New York facilities. Under the Worker Adjustment and Retraining Notification Act of 1988, 29 U.S.C. § 2101, *et seq.*, (1988) (the "Warn Act"), Seven–Up was required to give its employees sixty days notice of site closings or compensate laid-off employees for sixty days salary and benefits. Seven–Up failed to provide its employees with the requisite notice, and Local 812 commenced a Warn Act lawsuit against it on or about November 18, 1991.

Subsequent negotiations between Local 812 and Seven–Up ultimately resulted in a settlement agreement, which settled the Warn Act suit as well as other wage, pension and vacation pay issues. The union membership ratified the settlement agreement at a meeting held on December 18, 1991. Shortly thereafter, on February 24, 1992, nine former Seven–Up employees, represented by Ferris, brought suit against Seven–Up and Local 812. The action as against Seven–Up was later stayed pursuant to 11 U.S.C. § 362, after the company filed a bankruptcy petition in the United States Bankruptcy Court for the Southern District of New York.

The complaint alleged that Local 812 breached its duty of fair representation under Section 301 of the LMRA in settling the Warn Act suit against Seven–Up. Local 812, according to the complaint, never informed the union members that a Warn Act suit had been filed against Seven–Up, and failed to adequately explain the consequences of settling that action, namely that the employees would lose their priority wage creditor rights in the event Seven–Up filed for bankruptcy.

After a bench trial in September 1993, I ruled in favor of Local 812, concluding, *inter alia,* that the union's settlement of the Warn

Act claims was rational and reasonable. Noting that at least two of the plaintiffs had testified in their depositions that the Warn Act suit had been discussed during the ratification meeting, I further found that the union had informed the members of the Warn Act suit against Seven–Up and had discussed the material implications of settling that action. Trial Transcript at 3–4.[1]

Even though the union did not inform its members that settlement would nullify their priority creditor rights in bankruptcy, at trial plaintiffs failed to demonstrate the materiality of this omission. Not a single witness was proffered to testify that disclosure of this information, or any other facts allegedly concealed, would have caused him or her to vote against the settlement agreement. Indeed, the only witness to testify for the plaintiffs was Gabriel Paese, who, like the other plaintiffs, had voted against ratification of the settlement agreement, notwithstanding the alleged nondisclosures. I, therefore, concluded that the plaintiffs had "failed to show a causal connection between the union's failure to inform adequately and a change in the vote of its membership." *Id.* at 8.

Local 812 now seeks Rule 11 sanctions, arguing that "no reasonably prudent attorney could have determined under existing precedent that the facts presented supported a legally viable" Section 301 claim. Defendant's Memorandum in Support of its Motion for Rule 11 Sanctions at 1–2. Ferris maintains that his clients consistently represented to him that Local 812 never discussed the Warn Act suit with the membership, and failed to adequately inform the union members of the consequences of entering into a settlement with Seven–Up, and, therefore, Rule 11 sanctions should not be imposed.

### DISCUSSION

#### I. *Rule 11 Sanctions*

■ Rule 11, as it existed at the time of the alleged violations and the filing of the

---

1. At trial, plaintiffs claimed that a variety of other matters had not been disclosed during the ratification meeting. None of these other alleged omissions were briefed by the parties as part of their papers in the instant motion, and, there-

fore, I do not address them. In any event, since I did not find any of those alleged omissions material, consideration of those nondisclosures would not have affected the disposition of this motion.

instant motion,[2] reads, in pertinent part, as follows:

> The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Fed.R.Civ.P. 11. Designed to deter baseless filings and curb abusive litigation, *see Business Guides, Inc. v. Chromatic Communications Enters., Inc.,* 498 U.S. 533, 553, 111 S.Ct. 922, 934, 112 L.Ed.2d 1140 (1991), Rule 11 imposes upon signers of pleadings, motions or other papers presented to the court an affirmative duty to make a reasonable inquiry into the factual and legal viability of the claims asserted in such papers. *Eastway Constr. Corp. v. New York,* 762 F.2d 243, 253 (2d Cir.1985). Rule 11 sanctions, therefore, are appropriate only when the signing of the document in question was unreasonable under the circumstances. *Business Guides,* 498 U.S. at 551, 111 S.Ct. at 932–33; *Derechin v. State University of N.Y.,* 963 F.2d 513, 516 (2d Cir.1992). The objective reasonableness of the signing and not the signer's subjective belief controls the inquiry. *United States v. International Bhd. of Teamsters,* 948 F.2d 1338, 1344 (2d Cir.1991).

▮ Defendant's argument that Ferris's signing of the complaint should subject him to Rule 11 sanctions is not persuasive. Without question, to prevail on their Section 301 claims, plaintiffs had to demonstrate a causal connection between the alleged omissions or misrepresentations by the union and their injuries, that is, that the union members would not have ratified the settlement agreement had there been full disclosure. *See Hines v. Anchor Motor Freight,* 424 U.S. 554, 568, 96 S.Ct. 1048, 1058, 47 L.Ed.2d 231 (1976); *see Ackley v. Western Conference of Teamsters,* 958 F.2d 1463, 1472 (9th Cir.1992) (to prevail in a misrepresentation or nondisclosure Section 301 case, plaintiffs must show that "absent the misrepresentations, the outcome of the ratification vote would have been different"). However, that critical causal link could have been established through testimony of union members other than plaintiffs; the law does not require, as defendant suggests, that Section 301 plaintiffs themselves have been hoodwinked by the alleged omissions. Ferris certainly would have had grounds to believe that discovery would yield the necessary causation witnesses, given the repeated representations by his clients prior to the commencement of the action that the union members had not been informed of the Warn Act suit. Consequently, Rule 11 sanctions are not warranted for Ferris's commencement of this action.

His continued prosecution of this suit post-discovery, however, is another story. As stated above, plaintiffs did not present a single witness to testify that he or she would have voted against ratification had the alleged material information been fully disclosed. That not even a scintilla of evidence on causation was proffered is both astonishing and telling in light of representations made in the FOF and the JPTO, which Ferris signed and filed with the Court. Paragraph 25 of the FOF speaks of "clear evidence" that the "actions of Local 812 ... caused damages" to the plaintiffs. The Plaintiffs' Contentions of Disputed Facts set forth in the JPTO state in no uncertain terms

---

**2.** The current version of Rule 11, which went into effect on December 1, 1993, modified the prior rule in several respects, one of the most important changes being the shift from a mandatory to a discretionary sanctions regime. An April 22, 1993 order of the Supreme Court states that the amended rule "shall govern all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings in civil cases then pending." Here, both the offending conduct alleged and the filing of the instant motion occurred prior to the effective date of the 1993 amendments. I, therefore, do not find it just or practicable to evaluate this motion under the amended rule since the parties must have expected that their conduct and this motion would be judged under the former rule. In any event, I would reach the same result under the amended rule for it does not substantively change the standards governing factually invalid claims.

that the "results of the vote would have been different, the proposed settlement would have been rejected . . . if the Union and its counsel had fulfilled its statutory duty of fair representation." JPTO at 14.

Ferris, in his opposition to the this motion, offers no explanation for his complete proof failure at trial.[3] Apparently Ferris believes that his clients' pre-discovery representations that the Warn Act suit had not been mentioned at the ratification meeting excuses his signing of the JPTO and the FOF. However, those representations, no matter how consistent or convincing, do not make Ferris's signing of those documents post-discovery objectively reasonable. After the close of discovery, Ferris knew or should have known that he had no witnesses to provide competent proof of causation. Indeed, discovery, namely the depositions of two of his clients, had already cast grave doubt on his clients' earlier claims that the Warn Act suit had not been discussed at the ratification meeting. In any event, evidence that the Warn Act suit had not been mentioned is not, in and of itself, tantamount to proof that the ratification vote would have been different—precisely what plaintiffs had to prove to succeed on their Section 301 claims.

■■■ Because Ferris did not proffer any evidence at trial as to causation nor offer any explanation for his failure to do so, I find his signing and filing of the JPTO and FOF objectively unreasonable and clear violations of Rule 11.[4]

3. At a pre-motion conference on the issue of Rule 11 sanctions, Ferris commented that union members he had expected to call at trial to testify that they would have voted against ratification had the alleged material information been disclosed had decided not to testify. Ferris, however, did not make that claim in his opposition papers to the instant motion, and, therefore, I can only assume that those comments during the unrecorded conference were stray remarks, and I accord them no evidentiary weight in deciding this motion.

4. Ferris' remaining arguments against Rule 11 sanctions are without merit. The appropriateness of Rule 11 sanctions depends on Ferris' conduct, and not that of Local 812; hence, the union's decision not to file a summary judgment motion has no bearing on the question of sanctions. In any event, the union's decision not to file a summary judgment motion certainly does

Former Rule 11 mandated sanctions once a violation of the rule was found; however, the Second Circuit recently held that the discretion afforded district judges under amended Rule 11 may be imported into evaluations made under the former rule. *Knipe v. Skinner*, 19 F.3d 72, 78 (2d Cir.1994) (district court may give retroactive application to the discretionary component of amended Rule 11 but not to its heightened "non-frivolous" standard); *Sussman v. Bank of Israel*, 154 F.R.D. 68, 73 n. 1 (S.D.N.Y.1994) (court may give amended Rule 11 retroactive effect for purpose of exercising discretion to impose sanctions but may not apply heightened standards articulated therein in evaluating a party's conduct). I, however, decline to exercise my discretion not to impose sanctions because Ferris' conduct in bringing this suit to trial, long after discovery should have revealed the factual insufficiency of his clients' claims, is precisely the type of willful, wasteful and unjustifiable behavior Rule 11 proscribes. This needless trial wasted the time and resources of both the court and Local 812. To pardon Ferris' conduct would serve only to encourage other disgruntled union members and their attorneys to run to court whenever they are outvoted, thus depleting the limited resources of the unions as well as those of an extremely overburdened judiciary.

## II. *The Amount of Sanctions*

■■■ In imposing sanctions, the purpose of this remedy—to deter abusive litigation—

not bolster plaintiff's frivolous lawsuit. Even if a complaint survives a summary judgment motion, Rule 11 sanctions may still be imposed if, at a later stage, the action is found to be lacking a factual or legal basis. *See Calloway v. Marvel Entertainment Group*, 854 F.2d 1452, 1473 (2d Cir.1988) ("[w]here baseless allegations are used to prevent summary judgment, sanctions are mandatory if the attorney did not make a reasonable pre-filing inquiry when he or she originally put forward the claim"). Finally, I reject Ferris' argument that the instant motion for sanctions is untimely; the Second Circuit has held that the time limit for filing a sanctions motion is determined by the local rules, or lies within the discretion of the trial court. *Levine v. F.D.I.C.*, 2 F.3d 476, 478–79 (2d Cir.1993). Since the local rules are silent on this matter, I find the motion timely.

must not be forgotten. The sanction imposed must, therefore, fit the infraction, not overshadow it. Local 812 contends that its attorneys' fees in the amount of $54,837.50 which it expended in defending this action are an appropriate sanction. While I recognize the skill and experience of defense counsel, and applaud the high quality of the papers they presented to the Court, I do not believe that this lawsuit merited the efforts of three seasoned attorneys. Moreover, a sanctions award in excess of $50,000 would be highly excessive given my determination that Ferris's commencement of this action was not unreasonable. I believe that a sanctions award of $2,000.00 sufficiently redresses the violation, and will amply deter Ferris, a solo practitioner, and other attorneys from engaging in such wasteful conduct in the future. Thus, Ferris is ordered to pay defendant Local 812 $2,000.00.

### CONCLUSION

For the reasons stated above, defendant's motion for Rule 11 sanctions against plaintiff's attorney Robert L. Ferris is **GRANTED,** and Mr. Ferris is ordered to pay defendants the sum of $2,000.00. The Clerk of the Court is directed to enter judgment in accordance with this opinion.

**SO ORDERED.**