Eminent domain; inverse condemnation; flooding; federal cooperation in state and local flood control project. — On December 7, 1979 the court entered the following order:
Before Davis, Judge, Presiding, Kashiwa and Bennett, Judges.
Plaintiff alleges a taking by the United States of his property in Hardeman County, Tennessee, as a result of flooding allegedly induced by a flood control project owned *500 and operated by local governmental agencies.[1] The project consists of channel improvements, floodwater retarding structures, and land treatment. Local organizations constructed the project with federal financial and design assistance pursuant to the Watershed Protection and Flood Prevention Act of 1954, 68 Stat. 666, as amended, 86 Stat. 667, 16 U.S.C. §§ 1001 (1972) et seq.
Plaintiff asserts that due to the design and construction of the Porters Creek Watershed Channel, the drainage of Porters Creek is accelerated to the point where the channel banks cannot contain all the water flowing through. As a result, since construction, plaintiffs land has been flooded causing infertile sediment to deposit on plaintiffs land, thereby rendering the land infertile, and thus denying to plaintiff the beneficial use of the property and reducing the value of plaintiffs land as a whole.
The Fifth Amendment prohibition against taking private property for public use without just compensation is directed against the federal government. Hooe v. United States, 218 U.S. 322, 335-336 (1910). To hold the United States liable for a taking, a plaintiff must show that the federal government or its authorized agency or agent has done some affirmative act that deprives that plaintiff of property. D. R. Smalley & Sons, Inc. v. United States, 178 Ct. Cl. 593, 598, 372 F. 2d 505, 508, cert. denied, 389 U.S. 835 (1967). If private property is taken by the action of a state or local government entity, the United States cannot be held liable. Griggs v. Allegheny County, 369 U.S. 84 (1962); Edison Sault Electric Co. v. United States, 213 Ct. Cl. 309, 321, 552 F. 2d 326, 333 (1977).
The Watershed Protection and Flood Prevention Act (the Act) expressly places the responsibility for initiation and implementation of small watershed projects upon local organizations. 16 U.S.C. § 1004. The federal role is merely one of technical and financial assistance.[2] Because this is *501 so, there is no federal action sufficient to state a claim for taking against the United States.
The legislative history amply supports this view. In analyzing the bill that was enacted into law, Senate Report No. 1620 (June 18, 1954) states that "the bill provides for technical and financial assistance to State and local agencies in undertaking flood prevention work and agricultural phases of water management in watersheds and subwatersheds” and that "the Federal Government should cooperate with State and local agencies in flood control and water management projects.” S. Rep. No. 1620, 83d Cong., 2d Sess. (1954), reprinted in [1954] U.S. Code Cong. & Ad. News 2897. This Report indicates that Congress did not intend that federal government assistance to the local agencies under the Act would "federalize” the local projects. "Your committee believes that the local character of these projects should be preserved, and that they should not become Federal construction projects. ” Id. at 2899-2900. [Emphasis supplied.]
Also, the cases show that funding and approval of local projects by the federal government does not make the local authority the federal government’s agent so as to constitute a taking. See Housing Corp. of America v. United States, 199 Ct. Cl. 705, 468 F. 2d 922 (1972) (HUD approval of drawings, plans, and specifications for a project of a local housing commission and agreement to fund 90 percent of the costs did not make the local housing commission the Government’s agent); Eden Memorial Park Assoc. v. United States, 300 F. 2d 432, 439 (9th Cir. 1962) (analysis of the Federal-Aid Highways Act indicated that close cooperation was contemplated by that act, but the states or their agencies did not become agents of the United States in projects authorized by the act); Harris v. Boreham, 233 F. 2d 110 (3d Cir. 1956).
In both D. R. Smalley & Sons, Inc. v. United States, supra, and Correlated Development Corp. v. United States, 214 Ct. Cl. 106, 566 F. 2d 515 (1977), the plaintiffs alleged that (1) the contracts involved were drafted pursuant to the regulations and requirements of the United States and approved by the United States; (2) changes in plans were approved by the federal government; (3) the work was inspected and approved by the United States during its *502 construction and at its completion; and (4) the United States provided most of the funds for the project. In rejecting the plaintiffs’ taking claims against the United States, we stated that all of the acts and omissions complained of were those of the state and local authorities and that, because plaintiffs had not alleged a single affirmative act on the part of the United States that deprived them of any of their property, the United States was not liable.
The federal involvement in the case at bar is similar to that in Smalley and Correlated Development. As in those cases, plaintiff here alleges that the United States’ assistance in planning, inspection, and funding of the Porters Creek Watershed Project made that undertaking a federal project. However, as Smalley and Correlated Development make clear, such involvement is insufficient to enable a property owner to maintain a taking claim against the United States. Here, as in those cases, the project is clearly local and not federal. Liability, if any, lies with the state and local entities, not the federal government. See Griggs v. Allegheny County, supra, at 89.
Finally, plaintiff alleges that the Porters Creek Watershed District (the District) and the other local watershed districts involved in the Porters Creek Watershed Project are merely "strawmen” — created to take title to property and acquire easements, execute contracts, and maintain the completed watershed project.
Plaintiff is wrong. The State of Tennessee created the District pursuant to the Tennessee Watershed District Act of 1955. Tenn. Code Ann. 70-1901, et seq. Section 70-1818 of that code states that "each Watershed District * * * shall be a body politic and corporate and shall have all the powers necessary for carrying out the purposes set forth in this chapter.” The District is authorized, among other things, to acquire, by purchase or by eminent domain, hold, and sell property; to enter into contracts; to construct watershed improvements; to issue bonds and incur indebtedness; to cooperate with private persons and the federal government in developing watershed improvement projects; and to otherwise act as an independent agency of the state. That these purposes include cooperation with the federal government under the Watershed Protection and *503 Flood Prevention Act does not transform this state-created agency into a federal agent and does not turn the District’s activities into federal activities.
In light of the above, the District cannot be considered to be merely a "strawman.”
In view of the foregoing, upon consideration of the petition, defendant’s motion for summary judgment, and the briefs, we determine that defendant’s motion for summary judgment should be granted.
it is ordered that defendant’s motion for summary judgment is hereby allowed. Plaintiffs claim is dismissed.

 The local agencies involved in the project are Porters Creek Watershed District, Hardeman County, Tennessee; Hardeman County Soil Conservation District (Tennessee); Porters Creek Drainage District, Mississippi; and the Northeast Mississippi Soil Conservation District. Plaintiffs land is within the Porters Creek Watershed in Tennessee.

 The Act requires the local agencies to acquire, without cost to the federal government, all land, easements, or rights-of-way as are needed for the project and to operate and maintain the completed projects. 16 U.S.C. § 1004. The local organization may enter into its own contracts for engineering or construction services or it may request the Secretary of Agriculture to do so. 16 U.S.C. § 1005(1). In the instant case, the local agencies did obtain their own contractors.