Levy H. BLUE and Joy E. Blue,
husband and wife, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 393–88L.

United States Claims Court.

Sept. 13, 1990.

### III

Levy H. Blue and Joy E. Blue, Pensacola, Fla., pro se.

Dorothy R. Burakreis, Washington, D.C., with whom was Asst. Atty. Gen. Richard B. Stewart, for defendant.

## OPINION

FUTEY, Judge.

This regulatory taking case is before the court on defendant's motion to dismiss pursuant to RUSCC 12(b) or alternatively, for summary judgment. Plaintiffs are co-owners of a tract of land in Escambia County, Florida (County). The land adjoins Naval Air Station Pensacola. In their amended complaint, plaintiffs allege that defendant, by its participation in passage of the Escambia County Airport Land Use Ordinance, improperly restricted use of plaintiffs' property and thereby effected an unauthorized taking under the Fifth Amend-

ment. Plaintiffs seek that the ordinance data published by the Navy and used by the County be withdrawn and replaced, or in the alternative, that defendant compensate plaintiffs for an alleged diminution in the value of the property.

Defendant moves to dismiss the complaint on the ground that plaintiffs have failed to state a claim upon which relief can be granted. In addition, defendant argues that plaintiffs' taking claim is premature. Alternatively, defendant moves for summary judgment.

### Factual background

This case involves zoning laws enacted by a local government which affect property near a military airport. Plaintiffs are co-owners of the property. They feel that they "lost the fight" unfairly with the Navy over the enactment of these alleged improper restrictions.

In 1986, Escambia County initiated procedures established by state law, including notice and hearing, for consideration of a comprehensive zoning ordinance.[1] Both Navy personnel and plaintiffs actively participated in public hearings and workshops held over a 2–year period in accordance with state law. The Navy's involvement in the process included the dissemination of an Air Installation Compatible Use Zone (AICUZ) study published concerning land use near the Naval Air Station (NAS) Pensacola airport.[2]

Beginning on April 11, 1986, Navy personnel met with County staff to discuss proposed drafts of an airport zoning ordinance. On August 14, 1986, the Navy presented a draft to the Public Service

1. The parties dispute the very need for the ordinance. According to defendant, the County was required by Florida statute chapter 163 (effective July 1, 1985) to adopt comprehensive zoning including an aviation element. Plaintiffs, in contrast, contend that a prior County ordinance (No. 79–22), effective since 1979, met the mandate of chapter 163 to enact a comprehensive growth management plan (although it did not address land uses and densities as required by chapter 163).

2. The Air Installation Compatible Use Zone (AICUZ) Program has been instituted in an effort to coordinate the requirements of the mis-

sions of military air installations, with the development of the surrounding communities. The AICUZ is a concept of identifying compatible and incompatible land use around an air station, the purpose being to guide compatible private development through cooperation with local jurisdictions in order to minimize public exposure to aircraft noise and accident potential, while at the same time maintaining the operational capability of the station.
*Branning v. United States*, 228 Ct.Cl. 240, 654 F.2d 88 (1981), *aff'd*, 784 F.2d 361 (Fed.Cir. 1986).

Committee of Escambia County. On August 26, 1986, the Navy presented a draft ordinance to the Board of County Commissioners. In plaintiffs' parcel area (zone B2), the Navy's draft proposed only one residential unit per 5 acres; however, commercial and industrial uses were allowed. On September 25, 1986, the Navy incorporated information from a draft of the Harris, Miller, Miller, and Hanson Aircraft Noise Survey at Naval Air Station Pensacola. The January 30, 1987, draft ordinance contained a map which was based on the approved survey.[3]

Plaintiffs also participated extensively in the County zoning process. They had input into the citizens' draft ordinance, which the County considered in drafting its final ordinance. The citizens' draft proposed allowing 15 residential units per acre including mobile homes, as well as commercial and industrial uses. This plan was proposed for the entire area without regard to any of the more restrictive zones contained in the Navy draft. The minutes from an Escambia County Committee meeting held on January 20, 1988, indicated that Levy Blue spoke extensively on the subject. During this meeting, the committee decided to elect an Airport Zoning Advisory Committee. The advisory committee made recommendations that the full committee voted on. Comprised of members of the Citizens Committee, Navy personnel sitting as technical advisors, and Escambia County staff, the subcommittee included Levy Blue and an additional member designated by him.

In the Escambia County Airport Land Use Ordinance, (No. 88–17) (ordinance) adopted by the County on November 28, 1988,[4] the zones remain the same as in the Navy draft. Within zone B2, the ordinance permitted three residential units per acre, mobile homes, and commercial and industrial use. The ordinance incorporated a less

restrictive provision for rebuilding nonconforming uses and a more liberal grandfather clause for mobile homes than in the Navy draft.

Prior to the ordinance enactment in November 1988, plaintiffs' waterfront property was not restrictively zoned. Plaintiffs allegedly planned to develop the tract with 15 "waterfront, recreational oriented" dwelling units per acre. Passage of the ordinance, however, stymied these plans by zoning the land for three units per acre.

Plaintiffs' complaint was filed in this court on July 6, 1988, and defendant's answer was filed on September 6, 1988. On February 2, 1989, plaintiffs' complaint was amended by dropping a taking claim arising from overflights. Defendant's answer to the amended complaint was filed on February 16, 1989. Subsequently, on April 25, 1989, defendant submitted a Motion to Dismiss or Alternatively Request for Summary Judgment. Plaintiffs, on November 21, 1989, responded by filing a motion in opposition. Finally, on December 22, 1989, defendant's reply was filed.

### Discussion

The standard of review under a RUSCC 12(b)(4) failure to state a claim upon which relief may be granted is that plaintiffs' allegations of fact will be both accepted and construed in the light most favorable to plaintiffs, *see, e.g., White Mountain Apache v. United States*, 8 Cl.Ct. 677, 681 (1985), "although insofar as defendant's motion challenges lack of subject matter jurisdiction under RUSCC 12(b)(1), that presumption does not apply." *Id.*

A. Jurisdiction to review AICUZ reports

■ A large part of plaintiffs' arguments are based upon the premise that the AICUZ reports are invalid.[5] In addition,

---

3. Plaintiffs challenge the correctness of the Navy's AICUZ data and mapping. According to defendant, the initiation and review of the Noise Survey was accomplished in accordance with applicable Navy AICUZ guidance.

4. The Escambia County Airport Land Use Ordinance (No. 88–17) was consolidated with a com-

prehensive land use ordinance (No. 88–11) in the form of an ordinance (No. 89–2), adopted January 23, 1989.

5. For example, plaintiffs argue that "[t]he minimum noise and accident hazard potential impact on plaintiff and the surrounding community [based on the 1985 Naval Air Station (NAS)

plaintiffs specifically request that these reports be held invalid by this court. As a threshold matter, the court holds that it has no independent statutory subject matter jurisdiction to judicially review the correctness of AICUZ data and the AICUZ mapping. In addition, since there is no taking claim before this court, there is no reason for this court to review the AICUZ reports.

**B. The necessity for federal action in a taking claim against the United States**

Plaintiffs attempt to bridge the actions of the County government to the federal government by the Navy's participation in the zoning process and recommendations to County officials, including the AICUZ reports. In response, defendant argues that plaintiffs have failed to allege any federal government action for purposes of a taking claim.

To begin, the court notes that AICUZ studies are for advisory purposes only. The authority to permit or restrict development or use of private lands is left to the local jurisdiction. *Stephens v. United States*, 11 Cl.Ct. 352, 363 (1986). The AICUZ program does not by itself authorize a taking of property. *See* 32 C.F.R. § 256.1 (1988). Military land acquisitions require an express authorization of Congress. 10 U.S.C. § 2676(a) (1988). Acquisition authority should not be sought until "all possibilities of achieving compatible use zoning, or similar protection, [from local governments] have been exhausted and the operational integrity of the air installation is manifestly threatened." *See* 32 C.F.R. § 256.4 (1988).

In accordance with applicable case law, defendant acted merely as a substantial landowner with regard to the AICUZ reports and recommendations, and did nothing to incur a taking liability. In *De–Tom Enters. Inc. v. United States*, 213 Ct.Cl.

362, 552 F.2d 337 (1977), the Court of Claims held that the Navy, as a substantial, interested landowner, can participate in proceedings at the state or local level just as would any other property owner. Only when the government's regulatory activity is so extensive or intrusive that it meets the test of *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922), will such activity amount to a taking. *De–Tom*, 552 F.2d at 339. In *Pennsylvania Coal*, the Supreme Court held that property may be regulated to a certain extent, but if the regulation goes too far it will be recognized as a taking. *Pennsylvania Coal*, 260 U.S. at 415, 43 S.Ct. at 160. The question of whether the regulating process has gone too far "cannot be disposed of by general propositions," *id.* at 416, 43 S.Ct. at 160, but instead must be determined on a case by case basis.

The court need not entertain the merits of plaintiffs' taking claim, because the threshold federal action requirement is not met. The County's adoption of the ordinance provided the only relevant state action in plaintiffs' taking claim. Plaintiffs acknowledge that their elected representatives on the Escambia County Board of County Commissioners adopted the ordinance. Although the Navy participated in the process by submitting a draft, and providing technical assistance, the County is the ordinance adopting governmental entity. The County was free to reject all or part of the Navy's recommendations. "The United States cannot be held liable if private property is taken by the action of the state or local government entity." *Custom Contemporary Homes Inc. v. United States*, 5 Cl.Ct. 88, 90 (1984), quoting *Griggs v. Allegheny County*, 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962); *see Mesa Ranch Partnership v. United States*, 222 Ct.Cl. 623, 626, 650 F.2d 285 (1980) ("acts of federal officials in persuading lo-

Pensacola Flight AICUZ Study procedure] was not achieved, as required." Plaintiffs also allege that the AICUZ data contained an insufficient minimum noise impact and that this was followed by "a fateful erroneous affirmative 'act', the decision to use the erroneous AICUZ Study

data to regulate land use in the community, including plaintiff's property." Furthermore, "plaintiff contends that regulation based on invalid data, as here, that restricts at all is 'unduly' restrictive."

cal officials to obstruct development by placing new burdens upon it, or refusing to lift old ones, are not takings imputable to the United States"); *see also Lenoir v. United States,* 222 Ct.Cl. 499, 618 F.2d 125 (1979). Federal government liability for a taking claim is dependent on federal government action. *Lynch v. United States,* 221 Ct.Cl. 979, 981 (1979); *see United Nuclear Corporation v. United States,* 912 F.2d 1432, 1435 (Fed.Cir.1990).

Furthermore, it is undisputed that both the Navy and plaintiffs participated extensively in the County zoning process. As reflected in the 1986 Navy draft, the Navy recommended only one residential unit per 5 acres, no mobile homes in zone B2, and commercial and industrial uses. In contrast, the citizens' draft, in which Levy Blue participated, proposed 15 residential units per acre with mobile homes, as well as commercial/industrial uses without reference to zones. The County adopted neither the Navy's nor the citizens' draft in their entirety.

Plaintiffs cite *Rossmoor Corp. v. United States,* 503 F.2d 1406 (Ct.Cl.1974) (table of unpublished cases) as analogous to the instant case. Plaintiffs argue that *Rossmoor* shows that its claim "meets at least the threshold criteria." *Rossmoor* involved the proposed development of a senior citizens community on 2,775 acres of land near El Toro Marine Corps Air Station in California. The United States took actions to protect its interests, most notably by informing two federal agencies of sound studies that purportedly made portions of plaintiff's land unsuitable for development. Based on the trial commissioner's findings of fact, the United States settled by purchasing easements of plaintiff's property. Because *Rossmoor* was settled, the Court of Claims had no occasion to adopt, modify or reject the trial commissioner's findings and recommended decision. The decision is, therefore, not binding on this court. Moreover, subsequent cases do not acknowledge *Rossmoor. De-Tom* and *Custom Homes,* state that the United States cannot be held liable where a county "adopts, and has the power to adopt, the allegedly injurious course and the federal

agency ... is only playing the role of an influential affected landowner trying to persuade the county body to accept its position." *De-Tom,* 213 Ct.Cl. at 365, 552 F.2d at 339. Consequently, the court finds that plaintiffs have failed to state a claim upon which relief may be granted.

Finally, the court notes that with the following statement, plaintiffs seem to be unintentionally foreshadowing the holding of this court: "Plaintiff does not contest that the [federal] government has, of course, the right, like any other property owner, to seek to persuade local authorities to take action favorable to the government and to amass public support behind its position." Consequently, the state court is where plaintiffs' should go to determine what, if any, recovery they are entitled. Interestingly, plaintiffs seem to recognize this implicitly, since they often refer to Florida statutory and case law in their arguments.

C. Undue influence and due process claims

Plaintiffs allege jurisdiction under the Tucker Act which provides in pertinent part:

The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (1988).

"The Claims Court may not entertain claims outside this specific jurisdictional authority." *Adams v. United States,* 20 Cl.Ct. 132, 135 (1990), citing *Soriano v. United States,* 352 U.S. 270, 273, 77 S.Ct. 269, 271, 1 L.Ed.2d 306 (1956).

 Plaintiffs make several surprisingly revealing remarks about the nature of its claim. "Plaintiff submits that this claim is about undue influence." Furthermore, "[p]laintiff submits, that enough influence

was used to accomplish the 'taking' and that is the measure of how to judge when a needed justified regulation 'goes too far'." Plaintiffs' allegations and characterizations suggest a tort action over which this court has no jurisdiction. *Lynch v. United States*, 221 Ct.Cl. 979, 981 (1979). Even assuming that the Navy used undue influence to secure passage of the AICUZ ordinance, defendant could not be held liable here. "[I]t is not within the jurisdiction of this court to determine whether the action ... was, as alleged by the plaintiff, wrongfully coercive ... inasmuch as a wrongful coercion would amount to tortious conduct, and tort actions are excluded from jurisdiction of this court by 28 U.S.C. § 1491 (1988)", *De–Tom*, 552 F.2d at 342; *see Aetna Casualty & Surety Co. v. United States*, 228 Ct.Cl. 146, 164, 655 F.2d 1047, 1059 (1981).

Finally, to the extent that plaintiff's claim alleges a violation of the right to due process by the United States, it is beyond the jurisdiction of this court. *Carruth v. United States*, 224 Ct.Cl. 422, 445, 627 F.2d 1068, 1072 (1980) ("this court has no jurisdiction over claims based upon the Due Process ... guarantees of the Fifth Amendment, because these constitutional provisions do not obligate the Federal Government to pay money damages").

Due to the disposition on the above grounds, the court need not entertain defendant's "ripeness" argument.

### Conclusion

For all the above reasons, defendant's motion to dismiss is granted. The Clerk is directed to dismiss the complaint. No costs.