Darson H. **PERSYN**, et al., Plaintiffs,

v.

The **UNITED STATES**, Defendant.

No. 91–1535L.

United States Court of Federal Claims.

Jan. 19, 1995.

Craig L. Austin, San Antonio, TX, for plaintiffs.

Stuart B. Schoenburg, Washington, DC, for defendant. Major David Vecera, Washington, DC, of counsel.

## ORDER

MOODY R. TIDWELL, III, Judge:

This case is before the court on defendant's motion for summary judgment and plaintiffs' motion to strike defendant's summary judgment evidence. For the following reasons, the court denies defendant's motion in part and grants defendant's motion in part. Plaintiffs' motion to strike is dismissed as moot.

## FACTS

I. *Flight Activity*

Plaintiffs own land adjacent to or near Kelly Air Force Base (KAFB)[1] in San Anto-

---

1. Kelly Air Force Base was given its current name in 1948. Prior to that it was known as Camp Kelly.

nio, Texas. KAFB began operations in 1917 and is the oldest continuously active flying field in the United States Air Force (USAF). Since its inception, the predominant flight pattern has been from north to south. Runway 15/33 was constructed in 1955. It runs roughly parallel to the former runway and is still in use today.

Throughout its long history numerous aircraft have used KAFB, although the aircraft models and the frequencies of their flights have varied over the years. The total number of aircraft operations has also fluctuated, with the greatest number in the mid-to-late 1960s. Each aircraft model has its own unique mix of flight characteristics.

## II. *Regulations*

### A. *The United States*

In the 1970s the Air Force adopted the Department of Defense's Air Installation Compatible Use Zone (AICUZ) program. The purpose of the AICUZ program is to promote compatible civilian development near military airfields. Under AICUZ guidelines there are three accident potential zones at the ends of every active runway at all United States Air Force bases. A 3000-by-3000 foot zone at each end of the runway is designated the "clear zone." Because of the high potential for accidents in this zone the United States has acquired all of the land in the clear zones adjacent to KAFB. The next zone, Accident Potential Zone 1 (APZ1), is 3000-by-5000 feet running from the end of the clear zone. Although the risk of accidents is not as high in APZ1 as in the clear zone, there is nonetheless, a significant risk of accidents in this zone. There is also a quantifiable risk of accidents in Accident Potential Zone 2 (APZ2), which covers 3000-by-7000 feet at the end of APZ1.

In 1979 the Department of Housing and Urban Development (HUD) policy was that HUD assistance, subsidies and insurance were normally not available for "noise sensitive projects" in areas with high levels of noise. In 1984 HUD implemented a nationwide policy on "Siting of HUD Assisted Projects in Runway Clear Zones at Civil Airports and Clear Zones and Accident Poten-

tial Zones at Military Airfields." 24 C.F.R. pt. 51, subpart D (1994). Under this regulation projects that are inconsistent with Department of Defense recommendations for land use within accident potential zones will not be approved for HUD assistance. The regulation does not apply to projects approved before the effective date of the regulation. 24 C.F.R. § 51.305. None of the plaintiffs in this action have ever applied for, or been denied HUD assistance.

### B. *The City of San Antonio*

In 1952 the land surrounding KAFB became part of the City of San Antonio. In 1975 the city passed Ordinance No. 44845, which reflected recommendations contained in a 1975 AICUZ study. The ordinance established a clear zone and two Military Overlay Districts, known as MAOD–1 and MAOD–2 for land near military airports within the jurisdiction of the city. The Military Overlay Districts, were designed to "overlay" the regular zoning existing on the affected lands, limiting permitted uses to those allowed under both the regular zoning and in the Military Overlay Districts. The ordinance did not, however, specifically describe or place plaintiffs' properties within the Military Overlay Districts.

In August 1985 the Air Force presented the Mayor, the City Planner, the City Manager and the City Attorney of San Antonio with a formal briefing on the AICUZ study. The Mayor subsequently held public hearings on the Air Force's recommended zoning. The Air Force attended these hearings and recommended that zoning should be changed to conform to the AICUZ concept. On April 17, 1986, the City passed a zoning ordinance that conformed with AICUZ restrictions, although it did not contain recommended noise attenuation measures.

### III. *Proceedings in this Case*

On July 15, 1988, plaintiffs filed suit in the United States District Court for the Western District of Texas against the United States and the City of San Antonio. In their complaint, plaintiffs alleged that the United States and the city had damaged and taken their property without just compensation by increasing the frequency, noise level and danger of military aircraft flights over their

property, and by enacting invalid zoning regulations.

By order dated May 15, 1990, the district court found that the zoning ordinance was not an unconstitutional taking and dismissed the claim against the city for failure to state a claim upon which relief could be granted. By the same order, the district court held that it lacked subject matter jurisdiction over the claims against the United States. Accordingly, it transferred the remainder of plaintiffs' claims to this court. After the United States Court of Appeals for the Fifth Circuit determined that the district court order was non-final for appeal purposes, *see Persyn v. United States*, 935 F.2d 69, 73–74 (5th Cir.1991), the record was filed in this court pursuant to RCFC 84(a)(1). Subsequently, on November 26, 1991, plaintiffs filed a complaint in this court, incorporating the claims previously pending in the district court. In July 1992 plaintiffs filed their first amended complaint, adding additional plaintiffs to the caption and specifically invoking the jurisdiction of this court. Plaintiffs' second amended complaint was filed on November 23, 1993.

In April 1994 defendant moved for summary judgment, alleging, *inter alia*, that: (1) plaintiffs' claims based on physical takings are time-barred, (2) the actions of the City of San Antonio cannot be imputed to the United States, (3) claims of overreaching by United States' officials sounded in tort and, (4) the land use and zoning ordinances at issue do not constitute a taking. In response, plaintiffs argued, *inter alia*, that: (1) plaintiffs' claim for a physical taking under Texas law did not ripen until the United States adversely possessed its property for six years, (2) defendant took its property in 1984 when it restricted HUD financing to approved uses in accident potential zones and, (3) the actions of the local officials could be attributed to the United States because the "threshold requirement" of physical and regulatory action was met.

## DISCUSSION

I. *Motion for Summary Judgment Under RCFC 56*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c). The movant has the initial burden to identify from the record the absence of material issues of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the non-moving party has the burden of proof on an essential element of the claim, the movant need not submit affidavits in support of the motion. *Id.* at 324, 106 S.Ct. at 2553. To defeat a motion made and supported under Rule 56, the non-moving party must go beyond the pleadings and affirmatively demonstrate the existence of a genuine issue for trial. *Id.* In deciding a motion for summary judgment, the court does not "weigh the evidence and determine the truth of the matter but [only] determine[s] whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Further, the court must "view the evidence in a light most favorable to the nonmoving party and draw all reasonable inferences in its favor." *Hodosh v. Block Drug Co.*, 786 F.2d 1136, 1141 (Fed. Cir.1986) (citations omitted). Based on the standard of proof that would apply at trial, the court should ascertain whether there is sufficient evidence to warrant a directed verdict. *Anderson*, 477 U.S. at 254–55, 106 S.Ct. at 2513–14.

A. *Genuine Issues of Fact Preclude Summary Judgment on Plaintiffs' Claim that the United States Physically Took Plaintiffs' Property*

■ It is well settled that:

[W]hen *regular and frequent flights* by Government-owned aircraft over privately owned land *at altitudes of less than 500 feet* from the surface of the ground constitute a *direct, immediate, and substantial interference with the use and enjoyment of the property*, there is a taking by the Government of an avigation easement, or easement of flight, in the airspace over the

property and [ ] this taking is compensable under the Fifth Amendment to the Constitution.

*A.J. Hodges Indus., Inc. v. United States,* 355 F.2d 592, 594, 174 Ct.Cl. 259 (1966) (citations omitted) (emphasis added); *see also United States v. Causby,* 328 U.S. 256, 266, 66 S.Ct. 1062, 1068, 90 L.Ed. 1206 (1946). Even if the government regularly and frequently intrudes into airspace above a plaintiffs' property, however, there is no taking unless the "flights interfere substantially with the use and enjoyment of the land." *Causby,* 328 U.S. at 264, 66 S.Ct. at 1067 (citations omitted).

 A cause of action for taking by overflight does not accrue until the United States takes action constituting direct interference with the enjoyment and use of the land, *Bacon v. United States,* 295 F.2d 936, 938, 155 Ct.Cl. 441 (1961), with the intent to continue its interference. *Highland Park, Inc. v. United States,* 161 F.Supp. 597, 600, 142 Ct.Cl. 269 (1958) (citations omitted). To comprise a compensable taking, it is not necessary that the flights continue for the length of time required to create an easement by prescription. *See id.* The extent of an easement taken by the government is the lowest elevation at which the government "regularly and frequently" intrudes upon a plaintiff's airspace. *Speir v. United States,* 485 F.2d 643, 647, 202 Ct.Cl. 1020 (1973). Even where the government has acquired an avigation easement a new taking can occur if the government increases its intrusion by flying substantially noisier planes within existing easements, or by flying at lower altitudes. *See, e.g., Avery v. United States,* 330 F.2d 640, 643, 165 Ct.Cl. 357 (1964); *Branning v. United States,* 654 F.2d 88, 100, 228 Ct.Cl. 240 (1981). Damages for the new taking, however, will be limited to actual damage from the new intrusion, to the extent such damage occurred within six years of the date the complaint is filed. *Hero Lands Co. v. United States,* 554 F.Supp. 1262, 1 Cl.Ct. 102, 107, *aff'd,* 727 F.2d 1118 (Fed.Cir.1983), *cert. de-*

*nied,* 466 U.S. 972, 104 S.Ct. 2346, 80 L.Ed.2d 819 (1984).

 In its motion for summary judgment defendant conceded that it regularly and frequently intrudes upon plaintiffs' airspace. It contended, however, that during the Vietnam War flight activity was higher, aircraft were noisier, and flights flew at lower altitudes than at any subsequent time. Therefore, defendant alleged that because it took an avigation easement over plaintiffs' property more than six years before plaintiffs filed their complaint, claims based on a physical taking are barred by the statute of limitations.

 In response, plaintiffs argued, frivolously, that under the Rules of Decision Act, 28 U.S.C. § 1652, this court must follow Texas law to determine when plaintiffs' Federal Constitutional claim accrued.[2] This is not the case, as counsel for plaintiffs was informed on several occasions by this court. Under 28 U.S.C. § 1652, "[t]he laws of the several states, *except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide,* shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply." 28 U.S.C. § 1652 (1988) (emphasis added). Plaintiffs have alleged a violation of the Federal Constitution, therefore, the Rules of Decision Act has no bearing on this case. *See, e.g., Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 72–73, 58 S.Ct. 817, 819–20, 82 L.Ed. 1188 (1938). As Justice Jackson noted more than half a century ago:

A federal court sitting in a non-diversity case such as this does not sit as a local tribunal. In some cases it may see fit for special reasons to give the law of a particular state highly persuasive or even controlling effect, but in the last analysis its decision turns upon the law of the United States, not that of any state. Federal law is no juridical chameleon, changing complexion to match that of each state wherein lawsuits happen to be commenced because of the accidents of service of process and

---

**2.** According to plaintiffs, their claim did not accrue under Texas law until the United States

occupied their land for six years.

of the application of the venue statutes. It is found in the federal Constitution, statutes, or common law.

*D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.,* 315 U.S. 447, 471–72, 62 S.Ct. 676, 686, 86 L.Ed. 956 (1942) (Jackson, J., concurring). Ignoring the court's prior determination that section 1652 is inapplicable in the instant case, plaintiffs argued that both *Causby,* 328 U.S. at 267, and *United States v. Dickinson,* 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947), support their position. Plaintiffs' claim that *Causby* and *Dickinson* "follow 28 U.S.C. § 1652," is groundless. In *Causby* the Supreme Court held that a landowner's right to use and exploit his property can be taken by low and frequent overflights. *Causby,* 328 U.S. at 262, 66 S.Ct. at 1066. The Court also noted that its finding that the plaintiff had a protectable property interest was consistent with state law. *Id.* at 266, 66 S.Ct. at 1068. In *Dickinson,* the United States flooded plaintiff's land by raising river levels over a period of years. *See Dickinson,* 331 U.S. at 746, 67 S.Ct. at 1384. The Court held that the landowner was not required to file suit until the taking was complete and the situation was stabilized. *Id.* at 749, 67 S.Ct. at 1385. Neither case purports to follow section 1652 and, when read in context, the quotations provided by plaintiffs do not support the claim that this court must follow *Texas* law to determine when plaintiffs' *federal* claims accrued. *See generally, Causby,* 328 U.S. 256, 66 S.Ct. 1062; *Dickinson,* 331 U.S. 745, 67 S.Ct. 1382.

Plaintiffs' position is that the physical taking "matured" in 1985. Although it is clear from the record before the court that the total number of aircraft operations at KAFB was greater in the 1960s than at any time since, the question of whether there was a taking by overflight at that time cannot be resolved merely by comparing numbers. There are genuine issues of fact as to the noise generated by the aircraft models, the frequency of flight for different models, the altitudes of flight, the hours of flight, the effect on the use and enjoyment of plaintiffs' land, and the damages, if any, attributable to overflights occurring after July 15, 1982. Therefore, although the court rejects plaintiffs' argument that a claim for taking by

overflight does not accrue until the United States has "taken" plaintiffs' property for a six-year period, the court is constrained to find that genuine issues of fact preclude summary judgment on plaintiffs' claim of a taking by overflight.

**B.** *Plaintiffs' Regulatory Takings Claims Are Without Merit*

1. *The 1984 HUD Regulation Was Not A Taking of Property*

■ In their response to defendant's motion for summary judgment, plaintiffs argued, apparently for the first time, that the designation of Accident Potential Zones in 1977 "matured" into a regulatory taking in 1984 when HUD adopted a policy of not lending money for projects in accident potential zones that did not conform to DOD guidelines. Plaintiffs cited *Portsmouth Harbor Land & Hotel Co. v. United States,* 260 U.S. 327, 43 S.Ct. 135, 67 L.Ed. 287 (1922), and *Eyherabide v. United States,* 345 F.2d 565, 170 Ct.Cl. 598 (1965), for the proposition that the 1977 and 1984 regulations were a compensable taking. In both cases, however, the allegation was that the government had physically intruded upon plaintiffs' property; *neither case involved a regulatory taking. See Portsmouth,* 260 U.S. at 329–30, 43 S.Ct. at 136–37; *Eyherabide,* 345 F.2d at 567. The court notes that plaintiffs also erroneously represented that in *Portsmouth,* the "landowner was [allowed] full compensation when the Navy turned its real estate into an impact area." The Supreme Court did not reach the merits of plaintiff's claim in *Portsmouth,* it merely reversed the Court of Claims' dismissal of plaintiff's claim. *Portsmouth,* 260 U.S. at 330, 43 S.Ct. at 137.

■ Further, the Fifth Amendment of the Constitution does not require the government to compensate parties for the "taking" of any interest that may broadly be defined as "property." Rather, before compensation will be owed, plaintiffs must establish a protected property interest. *See Lucas v. South Carolina Coastal Council,* —— U.S. ——, ——, 112 S.Ct. 2886, 2901, 120 L.Ed.2d 798 (1992). Plaintiffs did not identify what prop-

erty was "taken" by the allegedly offending regulations.

Neither regulation in any way prohibits plaintiffs from using their property in any manner. The 1977 regulation merely provides "guidelines" for suggested uses that would conform with the hazards associated with land adjacent to or near military airports. The HUD regulation also does not prohibit use, it merely denies government funding for certain projects, unless the financing was approved before the effective date of the regulation. None of the plaintiffs in this case have ever sought, let alone been denied, HUD financing. (Defendant's Ex. S). Therefore, even if a property interest could arise based on HUD approval, under the facts of this case, plaintiffs would have no standing to raise this issue.

The court notes that although plaintiffs see a "clear and certain claim [by defendant] of the taking of a statutory easement by promulgation of [the 1977] regulation," the court does not discern such a claim in defendant's papers. The court is also unable to perceive the basis of plaintiffs' claim that the "burden" of the *regulation* was increased when the Air Force started flying the C–5A out of KAFB.

2. *The Regulatory Action of the Local Zoning Authorities May Not be Imputed to the United States to Create Liability for a Regulatory Taking*

Plaintiffs' claim of a federal regulatory taking based on the 1984 city zoning ordinance also must. fail because there is no evidence of an essential element of its claim—federal regulatory action. *See, e.g., De–Tom Enters., Inc. v. United States,* 552 F.2d 337, 339, 213 Ct.Cl. 362 (1977). Further, plaintiffs' argument that the court can attribute the actions of the City of San Antonio to the United States to find a federal regulatory taking is wholly without merit.

It is well-settled that the United States may use its power as a landowner to influence local zoning authorities without incurring liability for a "taking." *See e.g., De–Tom,* 552 F.2d at 339. Although the law on this issue is clear, plaintiffs argued that the "threshold to the application of the rule is equally clear. When other separate acts of Federal officials amounting to a taking are alleged, the courts will consider the influencing along with these other acts." To support this proposition, plaintiffs disingenuously used ellipses to combine a sentence from the *facts* in *Blue v. United States,* 21 Cl.Ct. 359, 361 (1990), with a sentence found seven paragraphs later in the *discussion, id.* at 362.

*Blue* does not, however, support plaintiffs' claims. The plaintiffs in *Blue* argued that the Air Force's dissemination of AICUZ reports, coupled with its extensive participation in the rezoning of plaintiff's property amounted to a taking of property. *Id.* at 360–61. The court held that the plaintiff's claim failed to state a cause of action upon which relief could be granted because there was no federal regulatory activity. *Id.* at 362–63. Taken in context, therefore, it is clear that *Blue* stands for the proposition that the "threshold federal action requirement" for a regulatory taking, is *federal regulatory action.*

Plaintiffs argument is also contrary to the holding of *De–Tom,* 552 F.2d at 339. In *De–Tom,* plaintiff alleged that the government wrongfully persuaded local officials to deny its zoning application. *Id.* The court held that the United States could not be liable for a regulatory taking unless *its own* regulatory activity was so extensive as to amount to a taking. *Id.*

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment on plaintiffs' claim of a taking by overflight is denied. Defendant's motion for summary judgment on plaintiffs' claims based on a regulatory taking is granted. Plaintiffs' motion to strike defendant's summary judgment evidence is dismissed as moot.

**IT IS SO ORDERED.**