Sarabeth M. DAVIS and Los Caballeros Center, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 95–587L.

United States Court of Federal Claims.

April 24, 1996.

The second is whether plaintiffs' claim that the United States violated the Fifth Amendment when it presented an Air Installation Compatible Use Zone (the "AICUZ") study that subsequently caused the depreciation of plaintiffs' property constitutes a claim upon which relief may be granted. Argument is deemed unnecessary.

## FACTS

The following facts are drawn from the amended complaint, unless otherwise noted. In 1976 the Los Caballeros Center, a limited partnership organized under the laws of the State of California, purchased approximately 8.9 acres of property adjacent to the Armed Forces Reserve Center (the "Reserve Center") in Los Alamitos, California. Sarabeth M. Davis is the managing general partner of the Los Caballeros Center. Together, Ms. Davis and the Los Caballeros Center ("plaintiffs") contend that the United States, acting through the Armed Forces, violated the Fifth Amendment when it failed to compensate plaintiffs after taking their private property for public use.

After purchasing the property at issue and before developing it, plaintiffs engaged in discussions with the Reserve Center and the City of Los Alamitos. These discussions lasted three years, during which environmental impact studies were performed. Plaintiffs eventually obtained military and municipal approval and subsequently developed the property to "include a bank a restaurant, two office buildings and six industrial office buildings." Amended Compl. filed Jan. 17, 1996, ¶ 4.

From 1980 to 1988, plaintiffs leased their property for these commercial uses. In December 1988 plaintiffs decided to market the property in order to recognize profits from their original investments. Accordingly, plaintiffs planned to terminate their tenants' leases. In November 1989 plaintiffs agreed to sell their property to Grace Church for $14,658,864.40. Plaintiffs and Grace Church opened an escrow and planned to close the escrow on February 15, 1990.

However, on or about December 1989, the military prepared and issued an AICUZ

Laurie Michelena Erickson, Newport Beach, CA, for plaintiffs.

Stuart B. Schoenburg, Washington, DC, for defendant. David Stanton, Army Environmental Law Division, of counsel.

### *ORDER*

MILLER, Judge.

This case is before the court on defendant's motion to dismiss plaintiffs' amended complaint for lack of subject matter jurisdiction, RCFC 12(b)(1) and for failure to state a claim upon which relief may be granted, RCFC 12(b)(4). Two issues must be resolved. The first is whether subject matter jurisdiction is present to entertain the claims alleged in plaintiffs' amended complaint.

study. AICUZ studies define restrictions on land uses in the vicinity of air installations to assure compatibility with installation operations and to insure that "people and facilities are not concentrated in areas susceptible to aircraft accidents." 32 C.F.R. §§ 256.1(b)(1) (1995). The AICUZ study established a "Clear Zone" prohibiting, among other things, residential and commercial uses of property within this zone. *See* 32 C.F.R. § 256.8 (1995) (categorizing acceptable land uses within Clear Zone). A portion of plaintiffs' property fell within the Clear Zone.

On February 12, 1990, Lt. Col. William Davies, the Airfield Commander at the Reserve Center, informed the Los Alamitos City Council that a segment of plaintiffs' property was within the Clear Zone. He further indicated that the intent of a Clear Zone is to minimize the risk of an aviation accident resulting in great loss of life and property. These pronouncements were made at a public hearing convened to discuss Grace Church's proposed use of plaintiffs' property. Plaintiffs responded to Lt. Col. Davies on February 13, 1990, requesting that he substantiate the information that he had presented.

Approximately one month later, Lt. Col. Davies responded to plaintiffs' request, denying that their property fell within the Clear Zone. On July 31, 1990, the Deputy Assistant Secretary of the Army issued a statement, noting the preliminary nature of the 1990 AICUZ study and stating that the Army was in the process of withdrawing previously distributed copies of the AICUZ study. The Los Alamitos City Council nevertheless denied plaintiffs' application to allow their property to be used for church purposes. Consequently, Grace Church reneged on its agreement to purchase the property.

Four years later, in June 1994, the California National Guard issued a new AICUZ study. In this study the Clear Zone did not include plaintiffs' property. From 1990 to 1994, plaintiffs' property remained vacant. A recent appraisal of the property estimated its value at $5,150,000.00. On August 24, 1995, the property was foreclosed. On January 17, 1996, plaintiffs filed their amended complaint

demanding compensation for damages exceeding $21,000,000.00.

## DISCUSSION

### 1. Lack of subject matter jurisdiction

■ When evaluating a motion to dismiss for subject matter jurisdiction pursuant to RCFC 12(b)(1), allegations in the complaint are construed favorably to the pleader, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), and the court accepts as true the facts alleged in the complaint. *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed. Cir.1988). "If these facts reveal any possible basis on which the non-movant might prevail, the motion must be denied." *W.R. Cooper General Contractor, Inc. v. United States,* 843 F.2d 1362, 1364 (Fed.Cir.1988) (citing, *inter alia, Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686). However, the burden is on plaintiffs to establish jurisdiction by a preponderance of the evidence. *Reynolds,* 846 F.2d at 748.

In their amended complaint, plaintiffs assert that the military frustrated the commercial development of their property by improperly disseminating the AICUZ study and by allowing Lt. Col. Davies to comment on the incompatibility of plaintiffs' property with the Reserve Center. Plaintiffs contend that neither of these acts should have occurred in public. As a result of the AICUZ study and Lt. Col. Davies' public remarks, plaintiffs argue that their property "is now stigmatized and the buildings [on this property] forever branded as being within the Clear Zone and thereby unsafe for any use involving human habitation." Amended Compl. ¶ 15. Plaintiffs allege that, but for the Government's acts, plaintiffs would have been able to develop fully their property, using it for its "best and highest use." *Id.* ¶ 26. Defendant counters that plaintiffs complain of a tort claim of slander of title, not a taking.

■ The Tucker Act confers upon the Court of Federal Claims the power to adjudicate "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department ... for liquidated or

unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (1994). The court may entertain only claims within the specific jurisdictional confines established by Congress in the Tucker Act. *Soriano v. United States,* 352 U.S. 270, 273, 77 S.Ct. 269, 271–72, 1 L.Ed.2d 306 (1957). Claims sounding in tort will be dismissed for lack of subject matter jurisdiction. *Aetna Casualty & Sur. Co. v. United States,* 228 Ct.Cl. 146, 164, 655 F.2d 1047, 1059 (1981). Such claims include those " 'based on negligent misrepresentation, wrongful inducement, or the careless performance of a duty allegedly owed.' " *Aetna,* 228 Ct.Cl. at 164, 655 F.2d at 1059 (quoting *Somali Dev. Bank v. United States,* 205 Ct.Cl. 741, 749, 508 F.2d 817, 821 (1974)). This list is not exhaustive of the tort claims lying outside the Court of Federal Claims' subject matter jurisdiction. As noted in *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 609, 372 F.2d 1002, 1010 (1967), "Congress has always withheld from this court and from the Tucker Act original jurisdiction over tort claims against the Government."

The question becomes whether the facts alleged in the complaint, when construed most favorably to plaintiffs, amount to a claim sounding in tort. Slander of title has been defined as "the publication of a false statement disparaging another's property rights in land, chattels or intangible things, that the publisher should recognize as likely to result in pecuniary harm to the other through the conduct of third persons in respect to the other's interests in the property." *Restatement (Second) of Torts* § 624 (1977).* Plaintiffs' allegation that the Reserve Center's premature public release of the AICUZ study and public statements, stigmatizing their property and consequently depreciating its value, approximates this definition of slander of title and suggests a tort action. One judge has taken the position that the "United States has not waived sovereign immunity for … a claim [of slander of title]." *Oak Forest, Inc. v. United States,* 23 Cl.Ct. 90, 93 (1991). If the claim is viewed as a claim of slander of title, the court lacks subject matter jurisdiction to hear it. This court concurs with the analysis in *Oak Forest.*

Despite plaintiffs' jurisdictional difficulties, the court has sympathy for their plight. The procedural history of this case shows that the military effectively misled plaintiffs in this matter. Initially, plaintiffs filed a tort claim against the California Army National Guard under the Federal Tort Claims Act, seeking a final agency decision required under 28 U.S.C. § 2675(a) (1994). In its final decision of March 16, 1995, the United States Army Claims Service denied plaintiffs' tort claims, because, according to the Department of the Army, their claims amounted to a claim of inverse condemnation. The Army informed plaintiffs that "the Federal Government has waived sovereign immunity with respect to inverse condemnation cases," and that claims for inverse condemnation fall within the jurisdiction of the United States Court of Federal Claims, under the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491(a)(1) (1994). However, after plaintiffs brought their action in the Court of Federal Claims, the Government, then represented by the Department of Justice, countered that the court lacked subject matter jurisdiction because their claims sound in tort.

Congress created the court to afford individuals a forum to bring specific claims against the Government. While placing jurisdictional limits upon this court, Congress did not intend those jurisdictional limits to be manipulated to prevent a claimant from recovering compensation against the Government. In a prior decision, this court cautioned against the use of such tactics. *See National Steel & Shipbuilding, Co. v. United States,* 8 Cl.Ct. 274 (1985). Although the Department of the Army—not the Department of Justice, which represents the United States in the Court of Federal Claims—advised plaintiffs to pursue their claim in this court, the principle is applicable. Nonetheless, the jurisdictional bar to plaintiffs' claim cannot be overlooked. The facts, as set forth

---

* Slander of title is also referred to as "disparagement of property." *Restatement (Second) of Torts* § 624 (1977).

in the amended complaint, state a tort claim beyond the jurisdiction of this court.

### 2. *Failure to state a claim upon which relief may be granted*

As an alternative ground for disposition and assuming that plaintiffs can establish jurisdiction, the amended complaint must be dismissed for failure to state a claim upon which relief may be granted. RCFC 12(b)(4) provides that a pleader may make a motion to dismiss for "failure to state a claim upon which relief can be granted." "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Therefore, if plaintiffs fail to assert a set of facts supporting their claim, the motion to dismiss should be granted. *Chang v. United States,* 859 F.2d 893, 894 (Fed.Cir.1988). Because of the severe nature of such a motion, "the court [is] obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir. 1995). To overcome defendant's motion to dismiss, plaintiffs' amended complaint must allege facts demonstrating that the Reserve Center's conduct amounted to a regulatory taking of their property under the Fifth Amendment.

Plaintiffs contend that the AICUZ study and its effect on the local government's decision "eliminated any and all economically viable opportunities for Plaintiffs' use of the Center." Amended Compl. ¶ 8. Specifically, plaintiffs assert that the Government's conduct effectively prevented the completion of plaintiffs' arrangement with Grace Church and further frustrated their ability to lease the property. According to plaintiffs, the Government's actions prohibited them from using their property for "its best and highest use." *Id.* ¶ 26. Lastly, plaintiffs contend that the Government pursued such action for the public's benefit and therefore, under the command of the Fifth Amendment, is required to compensate them.

The Federal Government is not necessarily liable for local government action. *Griggs v. Allegheny Cty.,* 369 U.S. 84, 89, 82 S.Ct. 531, 533–34, 7 L.Ed.2d 585 (1962). "[T]he Government can be held responsible for a Fifth Amendment taking only when its own regulatory activity is so extensive or intrusive as to amount to a taking...." *De-Tom Enterprises, Inc. v. United States,* 213 Ct.Cl. 362, 365, 552 F.2d 337, 339 (1977). This court's predecessor has held that where the United States Armed Forces, as a landowner in the community, simply influences a local government's zoning decision, the Federal Government's conduct is not extensive or intrusive enough to constitute a taking under the Fifth Amendment. *Id.* In similar instances where an AICUZ study has impacted property, the court has refused to entertain a taking claim. *Blue v. United States,* 21 Cl. Ct. 359, 362 (1990) (citing cases); *see Stephens v. United States,* 11 Cl.Ct. 352, 363 (1986) (noting that AICUZ studies are advisory only and authority to regulate land use remains with local government). An AICUZ study, without more, cannot constitute a taking of private property. *Blue,* 21 Cl.Ct. at 362; *see* 10 U.S.C. § 2676(a) (1994) (requiring Congressional authorization of military land acquisition); 32 C.F.R. § 256.4 (1995) (explaining procedure involved in policy of lowering incompatibility and noting acquisition should only occur after practical measures to reduce noise and local land use planning efforts have been taken).

Drawing all reasonable inferences from the facts presented in the amended complaint in plaintiffs' favor, plaintiffs fail to present facts establishing that conduct attributable to the Federal Government rose to a sufficient level to constitute regulatory taking, since their takings claim arises solely from the AICUZ study and Lt. Col. Davies' comments to the local government. Plaintiffs' amended complaint demonstrates that the Federal Government, through the AICUZ study and Lt. Col. Davies' comments, participated in the local government's land use decisionmaking. Not only does an AICUZ study, in itself, not amount to a regulatory taking, *see Blue,* 21 Cl.Ct. at 362, but to rule that Lt. Col. Davies' conduct amounts to federal regulatory action would restrict unreasonably the Federal Gov-

ernment, as a local landowner, from participating in local government land-use decisions. Because plaintiffs fail to offer any facts establishing a claim upon which relief may be granted, defendant's motion to dismiss must be granted.

## CONCLUSION

Accordingly, based on the foregoing, defendant's motion to dismiss is granted, and the Clerk of the Court shall dismiss plaintiffs' amended complaint without prejudice for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

No costs.