Darson H. PERSYN, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 91–1535 L.

United States Court of Federal Claims.

June 3, 1996.

Craig L. Austin, San Antonio, Texas, for plaintiffs.

Stuart B. Schoenburg, Washington, D.C., for defendant. Major Dawn Scholz and Major David Vecera, Washington, D.C., of counsel.

## ORDER OF SANCTIONS

MOODY R. TIDWELL, III, Judge:

This Order of Sanctions arises out of an action brought by seventy-seven plaintiffs for an alleged taking of their properties by the United States. Pending before the court are two outstanding Orders to Show Cause, *sua sponte*, why plaintiffs' counsel, Mr. Craig L. Austin, should not be sanctioned pursuant to RCFC 11 and the court's inherent powers. In an Order to Show Cause filed January 19, 1995 ("First Order"), the court afforded Austin the opportunity to show cause why he should not be sanctioned for matters in plaintiffs' response to defendant's July 21, 1994 motion for summary judgment, "where it appear[ed] plaintiffs' counsel engaged in a deliberate attempt to mislead the court regarding existing law." The court issued a second Order to Show Cause on September 27, 1995 ("Second Order") "[u]pon consideration of the papers filed by plaintiffs' counsel, and the complete absence of evidence offered at trial to support any colorable claims for relief," providing Austin an opportunity to show cause why he should not be sanctioned for his failure to conduct a reasonable inquiry into the facts and law to support plaintiffs' claims for relief.

1. Two pertinent opinions entitled *Persyn v. United States* are discussed in this Order of Sanctions. For the reader's convenience and for purposes of this Order only, *Persyn v. United States*, 32 Fed.Cl. 579 (1995), which addressed defendant's motion for summary judgment, will be referred to as *"Persyn I." Persyn v. United States*, 34 Fed.Cl. 187 (1995), which disposed of the case after trial, will be referred to as *"Persyn II."*

## FACTS

### I. Background of the Claims

The facts of this case are set out in *Persyn v. United States*, 34 Fed.Cl. 187, 190–93 (1995) (*"Persyn II"*),[1] and are only briefly summarized here. Plaintiffs are owners of thirty-four parcels of land located near Kelly Air Force Base ("KAFB") in San Antonio, Texas. KAFB, established in 1917, is located seven miles from the center of San Antonio, and is surrounded by the City of San Antonio and Lackland Air Force Base.

During the 1970s, the United States Air Force created a program which designated lands located near the ends of active runways as either in clear zones or accident potential zones ("APZs") because they were subject to greater risks of aircraft accidents.[2] Thirty-one of the thirty-four parcels at issue in this case are located to the southeast of KAFB, and three to the northwest. All of the parcels are located, at least in part, in the APZs for two of KAFB's active runways.

### II. Proceedings in the Case

Austin filed a complaint on July 15, 1988 in the United States District Court for the Western District of Texas on behalf of plaintiffs, alleging that the United States and the City of San Antonio had "expropriated and damaged" their land by "overflight noise and exposure to hazardous activities, and by constitutionally invalid zoning regulations." The City moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). The district court held that the ordinance was not an unconstitutional taking and dismissed the claim against the City for failure to state a claim upon which relief could be granted. The district court further held that it lacked jurisdiction over the claims against the Unit-

2. The clear zone, owned by the USAF, is a 3,000 foot by 3,000 foot area adjacent to the center line of the runway. Immediately adjacent to the clear zone are APZ1s. APZ1s are 3,000 feet wide and 5,000 feet long. APZ2s have the same width but begin 8,000 feet from the end of each active runway and extend to a distance of 15,000 feet from the end of the runway. *Persyn II*, 34 Fed. Cl. at 190.

ed States and transferred them to this court. Plaintiffs' appeal of the dismissal to the United States Court of Appeals for the Fifth Circuit was, likewise, dismissed. The Court of Appeals held that the district court order was non-final for appeal purposes. *Persyn v. United States*, 935 F.2d 69, 75 (5th Cir.1991). It further noted that the district court removed any barriers to transfer the claims against the United States to this court by dismissing the action against the City. *Id.* at 74.

On November 26, 1991, Austin copied the district court complaint and filed it in this court. He filed a first amended complaint, on July 1, 1992, which added additional plaintiffs and specifically invoked this court's jurisdiction. On November 23, 1993, he filed a second amended complaint which alleged that the United States took plaintiffs' properties by: "(1) physical invasions of noise, exposure to accidents and low level overflights; (2) engaging in a deliberate campaign to induce fear into the minds of prospective purchasers, with the intent to decrease the market value of the subject properties; and (3) using undue influence to persuade the City of San Antonio to enact a restrictive zoning ordinance applicable to the subject properties." *Persyn II*, 34 Fed.Cl. at 191. The complaint further alleged that due to these activities, the highest and best use of their lands was diminished from residential, commercial, and industrial to agricultural. Plaintiffs sought damages of over sixteen million dollars for the alleged taking. Second Am.Compl. at 15–16.

### A. The First Order to Show Cause

On April 18, 1994, defendant filed a motion for summary judgment. The court permitted Austin to take limited discovery to respond to the motion. On January 19, 1995, the court granted defendant's motion for summary judgment on plaintiffs' claim based on a regulatory taking. *Persyn v. United States*, 32 Fed.Cl. 579, 585 (1995) (*"Persyn I"*). The court, however, concluded that trial would be necessary to determine the facts surrounding plaintiffs' physical takings claim based on alleged low level overflights of military aircraft. *Id.* The court held that there

were genuine issues of fact specifically as to (1) the noise generated by prior and current aircraft models, (2) the frequency of flight for different models, (3) the altitudes of flight, (4) the hours of flight, (5) the effect on the use and enjoyment of plaintiffs' land, and (6) the damages, if any, attributable to overflights occurring after July 15, 1982. *Id.* at 584. The court emphasized the July 15, 1982 date because under 28 U.S.C. § 2501 (1994), a claimant has six years after the claim first accrues to file a suit over which the United States Court of Federal Claims has jurisdiction. Because plaintiffs' original suit was filed on July 15, 1988, plaintiffs were required to show that the right to relief was based on activities within six years of that date. Any claims for overflights before that date would be barred by the statute of limitations.

In an Order filed on the same date, the court found, *sua sponte*, that in response to defendant's motion for summary judgment, Austin appeared to have "engaged in a deliberate attempt to mislead the court regarding existing law." First Order at 1. The court identified the most egregious of these misstatements of law and ordered Austin to show cause why he should not be sanctioned for violation of RCFC 11. Austin responded to the Order on February 21, 1995 ("Resp. 1"). Defendant, who was invited to reply to that response, did so on March 8, 1995. A final reply by Austin was filed on March 22, 1995. The court refrained from entering a decision and judgment on the First Order pending litigation of the case.

### B. The Second Order to Show Cause

Following the Order of January 19, 1995, the case was scheduled for trial. On May 11, 1995, the court conducted a pretrial hearing in Washington, D.C. to address certain issues of admissibility of evidence. The court reserved ruling on whether two plaintiffs listed as witnesses would be qualified as expert witnesses. At the hearing defendant moved for a directed verdict because Austin had identified no evidence in his Appendix G filings upon which plaintiffs could possibly prevail. Based on the exhibits and witnesses in plaintiffs' Appendix G filings, Austin's pre-

trial memorandum, and statement of proposed findings of fact, as well as his statements at the pretrial conference, it did not appear that Austin understood the applicable law or was prepared to present colorable claims for relief. Because he did not understand plaintiffs' burden of proof in an avigation easement taking, the court reminded Austin of the six genuine issues of material fact identified in the January 19, 1995 Order that he would have to prove for plaintiffs to prevail. The court informed Austin that if he was not prepared to prove those elements of the claim he should withdraw his suit and not waste the court's time. Austin assured the court that he would prove physical takings after July 15, 1982. *See* Pretrial Trans. at 66–69.

Trial of this case took place on June 12–14, 1995 in San Antonio, Texas. At the close of plaintiffs' case-in-chief, defendant moved for a directed verdict. In this court the judge, rather than a jury, is always the trier of fact. Accordingly, there is no provision under the rules of this court for a "motion for directed verdict;" thus, the court treated defendant's motion as a motion for judgment under RCFC 52(c). The court allowed defendant's RCFC 52(c) motion in a September 27, 1995 Order. In a separate Order filed the same date, the court directed Austin to show cause why he should not be sanctioned based upon plaintiffs' pretrial filings and the complete lack of evidence at trial to support any colorable claims for relief. Second Order at 1. Austin filed a response to the Order and an affidavit in support of that response on November 3 and 7, 1995, respectively ("Resp. 2"). Defendant filed comments to that response on January 25, 1996 to which Austin replied on February 7, 1996. This Order of Sanctions addresses both the First and Second Orders to Show Cause.

## DISCUSSION

### I. RCFC 11

Attorneys and parties have an affirmative duty under RCFC 11 to understand and support any papers which they or their representatives sign:

> The signature of an attorney or party constitutes a certificate by the attorney or party that the attorney or party has read the pleading, motion, or other paper; that to the best of the attorney's or party's knowledge, information, and belief formed after *reasonable inquiry* it is *well grounded in fact* and is *warranted by existing law* or *a good faith argument* for the extension, modification, or reversal of existing law; and that it is *not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation....* If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or *upon its own initiative, shall* impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the filing ..., including a reasonable attorney's fee.

RCFC 11 (emphasis added). The language of RCFC 11 is identical to that of Fed. R.Civ.P. 11 ("FRCP 11") as it existed from 1983 through 1993.[3] Thus, reliance on FRCP 11 law prior to 1993 is appropriate. *See, e.g., Thornton–Trump v. United States,* 12 Cl.Ct. 127, 130 (1987).

"Rule 11 serves a dual purpose: punishment and deterrence." *Westmoreland v. CBS, Inc.,* 770 F.2d 1168, 1180 (D.C.Cir. 1985). The primary goal of the rule is to discourage baseless court filings and to streamline the federal courts' administration of cases and docket procedures. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990). Although the rule should be applied in light of concerns for chilling vigorous advocacy, its interpretation must be supported by the rule's principle goal of deterrence. *Id.* at 393, 110 S.Ct. at 2454. A court should not jeopardize judicial integrity by permitting groundless pleadings. *Westmoreland,* 770 F.2d at 1180.

---

3. The Court of Federal Claims has not adopted the 1993 amendments to FRCP 11. Thus, the following statements of law are applicable to the 1983 version of Rule 11.

"Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well-grounded in fact, legally tenable, and 'not interposed for any improper purpose.'" *Cooter & Gell*, 496 U.S. at 393, 110 S.Ct. at 2454. The court must determine whether counsel's prefiling inquiries were reasonable by considering all of the circumstances surrounding the case. The court must assess counsel's credibility to determine whether a paper was supported by facts and law "to the best of the signer's knowledge, information, and belief." *Id.* at 402, 110 S.Ct. at 2459. This test depends also upon what was reasonable at the time the document in question was filed. *Garr v. United States Healthcare, Inc.*, 22 F.3d 1274, 1279 (3d Cir.1994).

Rule 11 applies to *every* written paper filed with the court. RCFC 11; *see Westmoreland*, 770 F.2d at 1174. The signature of an attorney on a paper filed with the court is a representation of the "truth and reasonableness of the document." *Business Guides, Inc. v. Chromatic Communications Enters., Inc.*, 498 U.S. 533, 547, 111 S.Ct. 922, 931, 112 L.Ed.2d 1140 (1991). The reasonableness of the attorney's inquiry into the facts and law is judged by an objective standard—"reasonableness under the circumstances." *Id.* at 551, 111 S.Ct. at 933 (quoting the advisory committee's note to FRCP 11). The standard is effectively a negligence standard; evidence of bad faith is not required. Further, a good faith belief in an argument's merit is not enough. "[C]ounsel can no longer avoid the sting of Rule 11 sanctions by operating under the guise of a pure heart and empty head." *Zuniga v. United Can Co.*, 812 F.2d 443, 452 (9th Cir.1987). Although Rule 11 imposes a requirement that counsel's interpretation of law be objectively reasonable, it need not necessarily be correct to avoid Rule 11 sanctions. *Smith Int'l, Inc. v. Texas Commerce Bank*, 844 F.2d 1193, 1199 (5th Cir.1988).

Where a party's or attorney's conduct falls below the standard, the court *must* impose sanctions. *See Refac Int'l, Ltd. v. Hitachi, Ltd.*, 921 F.2d 1247, 1257 (Fed.Cir.1990). The amount or type of sanctions should be suitable to the violation and should be the least severe sanction necessary to advance the purposes of the rule. *Smith Int'l*, 844 F.2d at 1197. For example, sanctions may include payment of the other parties' expenses directly caused by the filing of the violative papers. *Cooter & Gell*, 496 U.S. at 406–07, 110 S.Ct. at 2461. Similarly, if attorney's fees are assessed as a sanction, the fees must be reasonable, and they must represent costs associated with the violation. *See Smith Int'l*, 844 F.2d at 1197. Unless the reasons for imposing sanctions are apparent, the court must give some explanation of the reasons for imposing sanctions. *Id.* The degree of support needed differs with the harshness of the sanction imposed. *Id.*

## II. Inherent Powers of the Federal Courts

The inherent powers of the federal courts to sanction an attorney for misconduct are derived from "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R.*, 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962) (sanctioning plaintiff by dismissing his action with prejudice for failure to prosecute); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 38, 111 S.Ct. 2123, 2128, 115 L.Ed.2d 27 (1991) (awarding the entire amount of the opposing party's attorney's fees as a sanction for filing meritless motions and pleadings and delaying the case); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766–67, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980) (noting that courts have inherent power to sanction counsel for willful disobedience of court orders). Judges have the inherent power to sanction a litigant who has commenced or conducted an action in bad faith, vexatiously, wantonly or for oppressive reasons. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975) (citing *F.D. Rich Co. v. United States*, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974)); *see also L.E.A. Dynatech, Inc. v. Allina*, 49 F.3d 1527, 1530 (Fed.Cir.1995).

The court's inherent power to grant attorney's fees where a party's actions are not

manifestly reasonable and assumed in good faith is an exception to the American rule that attorney's fees are not ordinarily recoverable by prevailing litigants absent statutory authorization. *Id.* at 254–59, 95 S.Ct. at 1620–22. This power applies at all stages of litigation in all types of cases. Unlike RCFC 11, sanctioning an attorney pursuant to the court's inherent powers requires a specific finding of bad faith. *See Chambers,* 501 U.S. at 46, 111 S.Ct. at 2133; *see also Baldwin Hardware Corp. v. Franksu Enter. Corp.,* 78 F.3d 550, 562 (Fed.Cir.1996). In addition, sanctions are discretionary if a violation is found. The court has the power to tailor the sanction to best relate to the violation. The sanction, nevertheless, should be tailored to the period of manipulation. *See, e.g., L.E.A. Dynatech,* 49 F.3d at 1531.

Sanctions should be awarded against attorneys who wilfully abuse the judicial process. *Cambridge Prods., Ltd. v. Penn Nutrients, Inc.,* 962 F.2d 1048, 1051 (Fed.Cir.1992); *see also Constant v. United States,* 929 F.2d 654, 658 (Fed.Cir.) (sanctioning counsel for persisting to raise the same issues that had been finally decided), *cert. denied,* 501 U.S. 1206, 111 S.Ct. 2799, 115 L.Ed.2d 973 (1991); *Laitram Corp. v. Cambridge Wire Cloth Co.,* 919 F.2d 1579, 1583–84 (Fed.Cir.1990) (recognizing the court's inherent powers to discourage attorneys' vexatious conduct on appeal), *cert. denied,* 506 U.S. 831, 113 S.Ct. 97, 121 L.Ed.2d 57 (1992); *see also Eash v. Riggins Trucking, Inc.,* 757 F.2d 557, 568 (3d Cir. 1985) ("[T]he [Supreme] Court acknowledged that although assessment of attorney's fees directly on an errant attorney was not a cost enumerated by Congress, the sanction was fully within the court's inherent powers.").

### III. The First Order to Show Cause

In plaintiffs' response to defendant's motion for summary judgment ("summary judgment response" or "Pls.' Resp.Brf."), filed July 24, 1994, Austin did not argue for the extension or modification of existing law.

Rather, he claimed that his legal theories therein were warranted by "existing law." There were three major areas wherein Austin's arguments were objectively unreasonable and can be attributed to his failure to conduct a reasonable inquiry into the law, or to an attempt to mislead the court as to existing law. Either conduct merits sanctions under RCFC 11.

Austin filed a "Plea to the Jurisdiction, Objection to Limitation Upon Response and Response to Order to Show Cause" to address the court's allegations. Resp. 1 at 1. As an initial matter, Austin argued that this court had no jurisdiction to order sanctions since it allegedly lacked subject matter jurisdiction under 28 U.S.C. § 1500 (1994). Resp. 1 at 2. The argument is frivolous because plaintiffs had already raised this issue in a motion to remand filed July 21, 1994,[4] and the court had determined that subject matter jurisdiction over the case was proper in a January 4, 1995 Order. The court had found that (1) it lacked the power to transfer the case to the district court pursuant to 28 U.S.C. § 1631 (1994) since the case could not have been brought there in the first place; (2) 28 U.S.C. § 1500 did not deprive it jurisdiction of the case; and (3) it did not lose jurisdiction pursuant to section 1500 because no case was pending in the district court at the time the complaint was filed in this court.[5] Issues addressed and decided become the law of the case unless the court, at its discretion, chooses to change them. The court has never changed its finding of jurisdiction. Notwithstanding the specific finding of subject matter jurisdiction, the court's authority to impose sanctions is invoked by the filing of the underlying complaint. *See Cooter & Gell,* 496 U.S. at 395, 110 S.Ct. at 2455 ("The violation of Rule 11 is complete when the paper is filed."). Thus, once Austin filed any papers in this court, jurisdiction to sanction attached. Moreover, the Supreme Court has held that an award of Rule 11 sanctions made at a time when the court believed it

---

4. Although Austin styled the motion as one "to remand," because the district court is one of coordinate jurisdiction, the court assumed that plaintiffs sought a transfer, not a remand.

5. The United States Court of Appeals for the Fifth Circuit had noted that by dismissing Austin's action against the City of San Antonio, the district court removed any barriers to transfer the claims against the United States to the Court of Federal Claims. *Persyn,* 935 F.2d at 74.

had jurisdiction will be upheld even if it was later determined that the court had no subject matter jurisdiction over the case. *Willy v. Coastal Corp.,* 503 U.S. 131, 137–38, 112 S.Ct. 1076, 1080, 117 L.Ed.2d 280 (1992).

Austin next claimed that the court "place[d] a vague and unusual limitation upon [his] right to defend himself...." Resp. 1 at 2. He argued, without citing *any* law, that the court deprived him of some unidentified, undefined due process right. A person subject to sanctions by the court has the right to notice and the opportunity to be heard. *See, e.g., Smith v. Ricks,* 31 F.3d 1478, 1488 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1400, 131 L.Ed.2d 287 (1995); *White v. General Motors Corp.,* 908 F.2d 675, 686 (10th Cir.1990) (citing *Braley v. Campbell,* 832 F.2d 1504, 1514 (10th Cir.1987)), *cert. denied,* 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991). Austin never argued inadequate notice and never specifically addressed the issues raised in the First Order to Show Cause. Instead, he reargued the merits of the case. The court provided Austin a full opportunity to explain why sanctions should not be awarded against him; the court need not waste scarce judicial resources by allowing relitigation of the merits of the case. Thus, his claim of due process violation is also frivolous.

In further response to the allegations of misstatement, Austin merely recited his arguments already set forth in the summary judgment response. His response to the court's First Order did not shine any new light on what the court deems inadequate and unreasonable inquiry into the law to support the arguments in plaintiffs' summary judgment response. The court is convinced that Austin should be sanctioned for misleading the court and failing to conduct a reasonable inquiry of the law as required by RCFC 11 for the three areas addressed below.

**A. Sanctions under RCFC 11 are Warranted Where Austin Failed to Conduct a Reasonable Inquiry into the Law and Misled the Court by Citing to *Blue* as Support for Plaintiffs' Regulatory Takings Claim.**

In plaintiffs' summary judgment response, Austin argued that a zoning ordinance enacted by the City of San Antonio constituted a regulatory taking. He further argued that the United States was liable for the alleged taking because it had improperly influenced the City to enact the ordinance. Pls.' Resp. Brf. at 21. He conceded that the United States may use its power as a landowner to influence local zoning decisions without incurring liability for a regulatory taking, but argued that it was "well settled" that "[w]hen other separate acts of Federal officials amounting to a taking are alleged, the courts will consider the influencing along with those other acts." Pls.' Resp.Brf. at 22. To support this argument Austin "quoted" from *Blue v. United States,* 21 Cl.Ct. 359 (1990), *Gilliland v. United States,* 215 Ct.Cl. 953, 1977 WL 9608 (1977) and *De–Tom Enters., Inc. v. United States,* 552 F.2d 337, 213 Ct.Cl. 362 (1977). Pls.' Resp.Brf. at 22–23. Austin's argument and its alleged support, however, were objectively unreasonable and misleading.

Austin "quoted" from *Blue,* to show that courts will consider "influencing" with other acts, as follows:

> The Court emphasized in *Blue,* supra: ... (P)laintiffs [sic] complaint was amended by dropping a taking claim arising from overflights ... This [sic] Court need not entertain the merits of Plaintiffs' takings [sic] claim because the threshold of [sic] Federal action claim [sic] is not met.

Pls.' Resp.Brf. at 22. *The first sentence of this "quote" was found in the factual background of the case. The next sentence was found six paragraphs into the discussion.* First, Austin's attempt to argue facts as "well settled" law is clearly misleading and constitutes bad faith. Second, neither sentence in his "quote" nor their unreasonable combination supports the proposition that courts consider federal government "influencing" when other acts by the government are alleged.

Austin's attempt to use *Blue* was clearly inappropriate because a reasonable inquiry into the law would have resulted in a conclusion that *Blue* did not support plaintiffs' reg-

ulatory takings claim. In its discussion of the need for federal action in a takings claim against the United States, the court in *Blue* stated that: "Plaintiffs attempt to bridge the actions of the County government to the federal government by the Navy's participation in the zoning process and recommendations to County officials, including the AICUZ reports." *Blue*, 21 Cl.Ct. at 362. The court found that the AICUZ ordinances were advisory and did not themselves authorize a taking of property. *Id.* The court further held that the Navy did not incur liability for a taking based on its activities as a powerful landowner because "[o]nly when the government's *regulatory activity* is so extensive or intrusive that it meets the test of *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922), will such activity amount to a taking." *Id.* (emphasis added). Thus, the only reasonable conclusion is that *Blue* did not support plaintiffs' claim. *See Persyn I*, 32 Fed.Cl. at 585 ("Taken in context, ..., it is clear that *Blue* stands for the proposition that the 'threshold federal action requirement' for a regulatory taking, is *federal regulation action*." (emphasis in original)). Austin knew or should have known that his misquote and miscitation would mislead the court, and thus he should be sanctioned. *See, e.g., Rice v. Hamilton Oil Corp.*, 658 F.Supp. 446, 450 (D.Colo.1987).

Austin also mislead the court in his citation to *Gilliland* and *De–Tom* for the same "well settled" proposition. His citation to *Gilliland* was only to a portion of the facts which simply outlined plaintiff's theories of liability. Again, Austin's attempt to argue facts as "well settled" law was unreasonable. Further, the court in *Gilliland* specifically found that "*De–Tom* did not purport to rule upon the Government's liability for taking where physical intrusion or damage has been coupled with regulatory interference." *Gilliland*, 215 Ct.Cl. at 955. Thus, Austin's assertion was false; it is not the law, much less "well-settled." An attorney may not falsely present an argument as though existing law supported it. A court has the right to expect counsel to completely and clearly express the law. *See Pierce v. Commercial Warehouse*, 142 F.R.D. 687, 690 (M.D.Fla.1992). Austin's outright miscitation, use of facts as law, and

ignorance of the law do not accurately and fully express the law.

By the First Order, Austin was invited to make any relevant arguments to show that he had not violated Rule 11 by making the alleged "well settled" proposition, and its alleged legal support. The court asked Austin to direct its attention to any case wherein the United States was held liable under the regulatory theory, as such evidence would be relevant to the issue of whether Austin's inquiry into the law was reasonable. He did not do so; he simply cited to *Blue*, *De–Tom*, and *Gilliland again* without raising any new arguments. "[M]aintaining a legal stance untenable with [the] law demonstrates either an ignorance of [the] law, and thus inadequate research, or some intent to mislead the ... court...." *DeSisto College, Inc. v. Line*, 888 F.2d 755, 766 (11th Cir.1989), *cert. denied*, 495 U.S. 952, 110 S.Ct. 2219, 109 L.Ed.2d 544 (1990). Either situation warrants an award of sanctions. After reviewing Austin's response to the First Order and reevaluating his actions, the court finds that Austin, at the very least, negligently cited inapplicable legal authority for his proposition. The court concludes that Austin conducted inadequate research or intended to mislead the court by his false statement of the law that the proposition was "well settled." Austin's conduct merits sanctions under RCFC 11 for filing a document for an improper purpose by misleading the court and asserting an argument that was legally untenable. *Cooter & Gell*, 496 U.S. at 393, 110 S.Ct. at 2454.

**B. Sanctions under RCFC 11 are Merited Where Austin's Arguments that the Court was Bound by the Rules of Decision Act and that *Causby* and *Dickinson* Support the Application of State Law to Determine Whether a Fifth Amendment Taking Occurs were Negligently and Unreasonably Raised.**

As to plaintiffs' claim based on overflights, defendant took the position that if there was a taking of an avigation easement, such a claim was barred by the statute of limitations. In response, Austin fixated on the

idea that the United States must comply with Texas real property law before it could exercise its right as a sovereign to take property. *See, e.g.,* Pls.' Am.Mot. for Order Compelling Discovery, June 18, 1993 at 2 (alleging that plaintiffs' statute of limitations defense was based on elements of taking by prescription). This theory is completely unwarranted by existing law or its extension. The few cases that discuss state law in connection with a constitutional taking do so only to determine whether the interest alleged to have been taken is property. *See, e.g., United States v. Causby,* 328 U.S. 256, 266, 66 S.Ct. 1062, 1068, 90 L.Ed. 1206 (1946) (holding that the landowner's protected interest in airspace comports with state law). Austin's failure to recognize this conclusion can be attributed to his negligent inquiry into the law.

In support of his theory that state law applied, Austin unreasonably argued in his summary judgment response that the Rules of Decision Act ("RDA"), 28 U.S.C. § 1652 (1994), and 28 U.S.C. § 2501, "determine[d] the law under which the government may acquire an easement by adverse usage across privately owned real estate...." Pls.' Resp. Brf. at 14. He further represented that *Causby* was the "leading authority" on when a cause of action for a taking by overflight accrues. Pls.' Resp.Brf. at 15. He further urged that the statute of limitations for filing a suit was controlled by *United States v. Dickinson,* 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947) and that *Causby* and *Dickinson* followed the RDA. Pls.' Resp.Brf. at 15–16. These arguments and claims were frivolous and lacked any reasonable basis, thereby demonstrating his failure to conduct an adequate and reasonable inquiry into the law as required by RCFC 11.

As part of his argument that state law applies to the instant case, Austin provided an apparent "quote" from *Causby:*

> We said in *United States v. Powelson,* supra, 319 U.S. [266] at page 279, 63 S.Ct. [1047] at page 1054, 87 L.Ed. 1390 [sic], that while the meaning of "property" as used in the Fifth Amendment was a federal question, "it will normally obtain its content by reference to local law." If we look to North Carolina law, we reach the

same result ... Flights over private land are not a taking, unless they are so low and so frequent as to be a direct and immediate interference with the enjoyment and use [sic] the land. 328 U.S. at 266, 66 S.Ct. at 1068 [sic].

Pls.' Resp.Brf. at 15. <u>As in Austin's "quote" from *Blue,* the statements separated merely by ellipses were actually taken from separate paragraphs.</u> By combining these statements, Austin presented a misstatement of law.

The more accurate quote from *Causby* demonstrates that Austin's argument was legally untenable:

> We said in *United States v. Powelson, supra,* [at] p. 279, [63 S.Ct. at p. 1054] that while the *meaning* of 'property' as used in the Fifth Amendment was a federal question, 'it will normally obtain its content by reference to local law.' If we look to North Carolina law, we reach the same result. Sovereignty in the airspace rests in the State 'except where granted to and assumed by the United States.' Gen.Stats. 1943 § 63–11.... Our holding that there was an invasion of respondents' property is thus not inconsistent with the local law governing a landowner's claim to the immediate reaches of the superadjacent airspace.

*Causby,* 328 U.S. at 266, 66 S.Ct. at 1068 (emphasis added). The Supreme Court recognized that it did not need to determine the extent of a landowner's property interest in the airspace above the land. Rather than attempt to apply state law, that Court merely noted that its reasoning under federal law comported with state law in defining the property taken. The actual result the Supreme Court found by looking at North Carolina law was that "[s]overeignty in the airspace rests in the State 'except where granted to and assumed by the United States.' Gen.Stats.1943 § 63–11." *Id.* at 266, 66 S.Ct. at 1068. Austin's attempt to support his argument that Texas law was the rule of decision by quoting *Causby* was totally at odds with the actual holding of the case, and created the false impression that the Supreme Court "followed" state law to determine whether there was a Federal Constitutional violation. Although the Court

in *Causby* indicated that it would have reached the same result under state law, the decision was made under federal law. *See Causby*, 328 U.S. at 266, 66 S.Ct. at 1068.

In further support of his theory for the application of state law, Austin cited *Dickinson* as "controlling" on the issue of when an action for a taking by overflight accrued. He provided an extensive "quote" from *Dickinson* to support this assertion. Pls.' Resp.Brf. at 15–16. First, the court notes that although the "quote" provided spanned two paragraphs in the official reporter, *see Dickinson*, 331 U.S. at 748–49, 67 S.Ct. at 1384–85, Austin separated the quoted material into three paragraphs, and did not indicate the omission of language in the middle of the first paragraph, and at the beginning of the second paragraph. Pls.' Resp.Brf. at 15–16. This miscitation created confusion as to the actual holding of the case. Second, although the issue in *Dickinson* was when the statute of limitations began to run on the landowners' takings claim, the case did not involve a taking by overflight. Rather, in *Dickinson*, the alleged taking was based on the government's action in gradually flooding the land. The Supreme Court held that when the government "bring[s] about a taking by a continuing process of physical events, the owner is not required to resort either to piecemeal or to premature litigation to ascertain the just compensation for what is really 'taken.'" *Dickinson*, 331 U.S. at 749, 67 S.Ct. at 1385. However, the Court limited this holding to flooding cases. *See United States v. Dow*, 357 U.S. 17, 27, 78 S.Ct. 1039, 1047, 2 L.Ed.2d 1109 (1958); *Fallini v. United States*, 56 F.3d 1378, 1381 (Fed.Cir.1995).[6] Again, Austin read with blinders and, at the very least, failed to adequately inquire into the law. Austin's assertions of law for which there was no support justifies sanctions. *Thornton v. Wahl*, 787 F.2d 1151, 1153 (7th Cir.), *cert. denied*, 479 U.S. 851, 107 S.Ct. 181, 93 L.Ed.2d 116 (1986).

Austin's claim, without providing citations, that both *Causby* and *Dickinson* "followed" the RDA was also misleading. The court was unable to find any reference in *Dickinson* to state law, or the RDA. There is no reference to the RDA in *Causby* either. Further, Austin cited to *Causby* for the specific proposition that there was a distinction between the date an action for "inverse condemnation" may be brought and the date it must be brought. *See* Pls.' Resp.Brf. at 14–15. This argument was also legally untenable. There is no reference in *Causby* to the date respondents' claim accrued. Rather than attempt to argue an extension of law, Austin, without any reasonable basis, presented these theories as existing law, thereby demonstrating a lack of adequate inquiry into law and constituting an attempt to consciously mislead the court. Either action merits sanctions under RCFC 11. Asserting a theory with no legal authority merits sanctions because it demonstrates a failure to conduct a reasonable inquiry into the law. *See Constant v. Advanced Micro–Devices, Inc.*, 848 F.2d 1560, 1571–72 (Fed.Cir.), *cert. denied*, 488 U.S. 892, 109 S.Ct. 228, 102 L.Ed.2d 218 (1988). A reasonable attorney would not champion a theory with no legal authority; he would at least attempt to argue for the extension or modification of existing law, something Austin did not do.

In response to the court's concern about Austin's misstatements of law, he merely stated that the court overlooked his disclaimer in the summary judgment response that "[i]n the case at bar, it is not necessary to reach points of Texas law." Resp. 1 at 6. Yet, even with this disclaimer, he continued to argue this point for about three of the nine pages of his response to the First Order. He again claimed that *Dickinson* set a six year statute of limitations for claim accruals and that "Texas law will control." Resp. 1 at 6–7. However, the Supreme Court in *Dickinson* did not indicate any required prescriptive period. It only noted that: "When the prop-

---

**6.** As the court noted in *Persyn II, Dickinson* provides the general principle that "a claim for taking based on continuing acts of physical invasion does not accrue until the extent of the invasion and the degree of interference is known or should be known." *Persyn II*, 34 Fed.Cl. at 197. For avigation takings, "the extent of the invasion and the degree of interference is ascertainable when the United States *begins* to operate its aircraft at low elevations and with such frequency that they substantially interfere with the use and enjoyment of the land, with the intent to continue such flights indefinitely." *Id.* (emphasis in original).

erty was flooded the United States acquired the land and it became part of the river." *Dickinson,* 331 U.S. at 751, 67 S.Ct. at 1386. Austin also cited to *Richmond, Fredericksburg & Potomac R.R. v. United States,* 27 Fed.Cl. 275, 289 (1992), *aff'd,* 75 F.3d 648 (Fed.Cir.1996), for the proposition that state law applied to this case. Austin's citation, however, addressed the form of the property interest and the right taken, not the manner in which the United States takes property. *See id.* at 287–89. Austin did not adequately justify his actions in his response to the court's First Order. In light of Austin's misinterpretation of the law, the court finds that he failed to reasonably investigate the law, and attempted to mislead the court. By twisting the law to support irrelevant arguments, "based on half-truths and illogical deductions from misused legal authority," and misrepresentations of controlling law, Austin's actions merit sanctions. *See State Indus., Inc. v. Mor–Flo Indus., Inc.,* 948 F.2d 1573, 1580 (Fed.Cir.1991).

### C. Austin's Assertion that 28 U.S.C. § 2501 Established the Date the Cause of Action Accrued was an Unreasonable Misstatement of Law.

Austin argued in the summary judgment response that the decisions of this court "establish the proposition that for the Air Force to acquire a permanent avigation easement an adverse usage continuing over a period of six years is required by federal statute. 28 U.S.C. § 2501." Pls.' Resp.Brf. at 18. This is not an accurate statement of law. 28 U.S.C. § 2501 does not apply to the date a cause of action accrues, e.g. when the right vests. Rather, it is a statute of limitations on actions brought against the United States, e.g. the amount of time plaintiffs have to file a claim after it vests. An assertion, this unreasonable, is clearly attributable to Austin's failure to conduct adequate research of the law.

Austin's response to the court's First Order as to why he mislead the court with this argument was unclear. Not once did he even refer to 28 U.S.C. § 2501 or § 1652. A brief in response to a sanctions challenge which simply ignores the allegation of frivolity and compounds the misconduct with more frivolous assertions provides grounds for sanctions. *See State Indus.,* 948 F.2d at 1580. In this case, because of his mischaracterization of the law and failure to address the matter, sanctions are warranted.

### IV. The Second Order to Show Cause

The court filed the Second Order due to the well-nigh absolute lack of evidence at trial. The lack of any credible evidence at trial to support any colorable claims for relief can be attributed to Austin's failure to conduct a reasonable inquiry into the facts and law. The Second Order raised three areas in which Austin failed to support plaintiffs' claims. In lieu of addressing these areas initially, Austin chose to challenge the court's impartiality and recognition of evidence. None of the claims raised in Austin's response to the Second Order convince the court that sanctions are not warranted. Austin first alleged "consistent and overt prejudice of the [c]ourt in favor of the Air Force and against the landowners" by ignoring indisputable evidence from Kirby Gholson and A.C. Lopez. Resp. 2 at 1. Aside from this statement as an absolute affront to the court's integrity which should not be tolerated by any judicial body, Austin's allegations are wholly unsustainable. Where the judge is the fact finder, it is his duty to determine the credibility of witnesses as well as to decide the integrity and reliability of evidence.

To support a claim of prejudice, Austin attempted to argue that the court ignored "indisputable evidence" as to physical intrusions by overflights below 500 feet by aircraft. He provided a variety of mathematical figures calculated on the claim that an instrument glide angle *might* start in the middle of a runway because aircraft land and take-off from the end of runways. Resp. 2 at 1–3. Austin's argument was unreasonable; planes do not necessarily land nor take-off at the very end of a runway. Austin's claim that the evidence was "indisputable" is further troubling based on the fact that he had conducted a deposition of an air traffic manager, who noted that aircraft do not necessarily land at the end of runways. *See* Def.'s Com-

ments on Counsel for Pls.' Statement in Resp. to the Ct.'s Sept. 27, 1995 Order to Show Cause, App., Ex. 1 at 9–10, 14.[7] This allegedly "indisputable evidence" was supported by only one of plaintiffs' witnesses, Kirby Gholson, whom the court found wholly untrustworthy. *Persyn II*, 34 Fed.Cl. at 198 ("The only . . . 'evidence' of the altitude of aircraft came from a dubious exercise performed by Kirby Gholson, plaintiffs' totally discredited appraiser."). His calculations were not legally nor factually supportable and, thus, not believable. *See id.* at 198–99. In addition, Gholson's testimony related to aircraft glide paths and matters related to military aircraft landings and departures was unconvincing since Gholson admitted to having no education, training or experience beyond the real estate appraisal profession. *See, e.g.*, Trial Trans. at 476–77.

Austin also claimed that the court should not have disregarded Lopez' testimony. However, the court specifically held that it "was insufficiently satisfied with Lopez' credibility to accord weight to his testimony," relying on the fact that the witness changed his testimony with Austin's assistance to comport with the latter's views. *Persyn II*, 34 Fed.Cl. at 198. Austin demanded that "[p]laintiffs have made a case under the undisputed evidence that a taking has occurred." Resp. 2 at 5. He professed that "[t]he Court should have recused itself long ago." Resp. 2 at 5. There is no basis to these demands in light of the court's decision in *Persyn II*. The facts presented by Austin at trial did not support plaintiffs' claims. *See, e.g., Persyn II*, 34 Fed.Cl. at 198–201. Austin's *wishful* belief that he proved his clients' claims cannot protect him from a justified finding of sanctions under RCFC 11 and the court's inherent powers. *See Temple*

*v. WISAP USA*, 152 F.R.D. 591, 600–01 (D.Neb.1993).

Austin further claimed that he "has never been professionally disciplined, sanctioned, or held in contempt," in 35 years of practice. Resp. 2 at 18. He claimed that "[a]ll controversies between bench and bar in this case are purely of law." Resp. 2 at 18. His claims are futile because he, again, demonstrated his failure to understand the proceedings in this case and only succeeded in frustrating the judicial process. The court specifically noted in its Second Order that Austin's inquiries were being questioned due to "the complete absence of evidence offered at trial to support any colorable claims for relief." Second Order at 1. Further, Austin's prior course of litigation is irrelevant when determining the need for sanctions. *See In re Perry*, 918 F.2d 931, 934 (Fed.Cir. 1990), *cert. denied*, 502 U.S. 808, 112 S.Ct. 49, 116 L.Ed.2d 27 (1991). "[L]ack of prior misconduct is no excuse for misconduct here." *State Indus.*, 948 F.2d at 1580.

Without citing *any* legal authority, Austin claimed that by refusing to specify which pleading, motion or other paper was objectionable and violative of Rule 11, the court denied him his due process rights. Austin also asserted that the court's Order was vague and nonspecific and thus violative of his due process rights. Courts have held that failure to specify each pleading, motion or other paper for which sanctions are imposed does not violate an attorney's rights. *See, e.g., White*, 908 F.2d at 680–81. In this case, Austin *was* notified as to which papers justified sanctions, e.g. plaintiffs' summary judgment response and the pretrial, Appendix G filings. Finally, Austin argued that "the Court's jurisdiction ceased by operation

---

7. Austin claimed that the court may not rely on the depositions provided by defendant in its comments to the court's Second Order because "[n]one of the copies include[d] either an original, facsimile or photographic copy of either the signature of the deponent or of the officer taking the deposition." Rather than challenging their content with contrary evidence, Austin chose to challenge their authenticity. Austin cited RCFC 32(a)(3) stating that the court did not make the required findings in order to use the depositions. His attempt to discredit the use of the depositions was offensive where he, himself, used one

of the same depositions in the summary judgment response. *See* Pls.' Resp. to Def.'s Mot. for Summary Judgment, filed July 21, 1994, Ex. 2. Plaintiffs' copy of the deposition did not include the signature of the deponent nor the officer taking the deposition. The court is not persuaded by Austin's attempt to misdirect the importance of these documents. Further, Austin misread RCFC 32(a)(3). That rule deals specifically with the "Use of Depositions in Court Proceedings," where it may be difficult for a witness to testify at trial or at a hearing. Rule 32(a)(3), therefore, is not applicable here.

of law on November 27, 1995." This assertion is contrary to law. The Supreme Court has held that sanctions may be and are imposed after a judgment on the merits. *Chambers,* 501 U.S. at 56, 111 S.Ct. at 2138 (citing *Cooter & Gell,* 496 U.S. at 395–96, 110 S.Ct. at 2455–56). The court does not find any of Austin's arguments raised in his response to the Second Order to sway a finding for sanctions against him. The court is satisfied, having reviewed Austin's response to the Second Order, that he did not conduct a reasonable inquiry of the facts and law to support plaintiffs' claims for the areas highlighted below.

### A. Plaintiffs' Claim for a Regulatory Taking Lacked Any Legal Support, Indicating Austin's Failure to Conduct a Reasonable Inquiry into the Law.

Plaintiffs' complaint could be separated into two separate claims—one for the taking of an avigation easement, and the other for a regulatory taking based on a zoning ordinance enacted by the City of San Antonio. By filing plaintiffs' complaint with the court, Austin's signature on the paper was a representation of the "truth and reasonableness of the document." *Business Guides,* 498 U.S. at 547, 111 S.Ct. at 931. Although his legal arguments need not be correct to avoid Rule 11 sanctions, they must be objectively reasonable. *Smith Int'l,* 844 F.2d at 1199.

Plaintiffs' complaint specifically alleged that the government engaged in a deliberate campaign to induce fear into the minds of prospective purchasers and used undue influence to persuade the City of San Antonio to enact a restrictive zoning ordinance applicable to the subject properties. *See* Second Am.Compl. at 4. A reasonable investigation into the law would have revealed the failure of this claim. *See, e.g., Gilliland,* 215 Ct.Cl. at 953 (holding that "wrongful influencing by the Federal Government of actions by a separate governmental entity is at bottom a claim grounded in tort," and this court does not adjudicate claims in tort). Austin's continued assertion of the regulatory takings claim was certainly not reasonable.

The court notes that the requirement of reasonableness applies to an attorney's argument for extension of existing law as well as to the argument that a position is valid under existing law. *See Smith Int'l,* 844 F.2d at 1199–1200. Austin made no attempt to argue that the United States *should be* liable, but instead argued that the United States was liable under "well settled" law. Nevertheless, the court has been unable to reconcile Austin's theory with a good faith argument for the extension of existing law. Indeed, Austin manufactured law with the use of *Blue* to support the argument.

In response to the court's Second Order, Austin did not raise any new arguments as to why he asserted the regulatory takings claim on behalf of plaintiffs. In the Second Order, Austin was directed to cite to any cases which prove this claim. He did not; he only recited to the same cases which the court had already evaluated and rejected. As an experienced attorney, Austin knew or should have known with reasonable research that this claim was groundless. The court was unable to find a single case wherein the United States was held liable for a regulatory taking based on the regulatory actions of a separate, non-federal governmental entity. In contrast, courts, in numerous cases, have held that the United States was not liable for a regulatory taking unless it had itself engaged in regulatory activity. *See, e.g., Blue,* 21 Cl.Ct. at 363. Based on the court's review of the cases cited by the parties, as well as its own research, Austin's theory of liability pursuant to the zoning ordinance was not objectively reasonable. Raising a theory without legal support indicates Austin's failure to conduct a reasonable inquiry into the law and, thus, merits sanctions.

### B. Austin's Legal Argument that Defendant was Liable for a Taking based on Invasions of Noise and Accident Potential Lacked Factual and Legal Support.

In the Second Order, the court commented that Austin had not apparently, reasonably supported a finding that *mere* noise and accident potential constituted a physical invasion redressable by the Fifth Amendment. Aus-

tin cited to *Portsmouth Harbor Land & Hotel Co. v. United States,* 260 U.S. 327, 43 S.Ct. 135, 67 L.Ed. 287 (1922), for the proposition that "[r]isk alone was sufficient" to prove a physical invasion. Resp. 2 at 14. This case was inapposite to the case at bar. It dealt with the placement of forts from which guns were fired across a condemnee's land. Austin was unable to cite any other law to prove his proposition. Only at the threat of sanctions following trial did Austin try to claim that he was arguing for an extension of the law espoused in *Portsmouth* to cases involving accident potential zones. This claim comes too late. His failure to provide sound legal support for the claims can only be attributed to a failure to conduct reasonable research of the law and a desire to mislead.

Austin tried to further argue that "[p]hysical intrusions, trespasses, by low level instrument landings is all that need be proved to establish an essential element of a taking. Additional damages caused by noise and crash hazard from overflights at higher levels are redundant." Resp. 2 at 4. This is an unusual assertion especially since Austin tried to claim damages caused by noise and crash hazards from overflights in filings such as plaintiffs' summary judgment response. *See, e.g.,* Pls.' Resp.Brf. at 10. Austin's continued failure to support plaintiffs' claims demonstrates bad faith in initially raising them. The court finds that because Austin had no intent in arguing the claim, he raised it for no purpose, or for an improper purpose, either of which are sanctionable actions.

### C. Lack of Any Credible Evidence at Trial for a Physical Taking Supports a Finding of Sanctions Against Austin Under the Court's Inherent Powers and RCFC 11.

The court's principle concern in directing the Second Order was the remarkable lack of evidence presented by Austin at trial, which can be attributed only to his failure to conduct a reasonable inquiry into the facts. During the pretrial conference on May 11, 1995, Austin assured the court that he had the witnesses and evidence to prove plaintiffs' case. *See* Pretrial Trans. at 71. Yet, at the close of plaintiffs' case-in-chief, it was apparent to the court that Austin failed to uphold his assurance of presenting evidence to prove the case:

Mr. Austin provided no credible evidence of the frequency of flights. The mix of aircraft overflying plaintiffs' properties, the altitudes of the various aircraft or information about the runways. Plaintiffs' counsel was apparently unable to distinguish between his statement of facts and his witnesses' testimony.

Plaintiffs' claims of noise increases after 1982 were unsupported by the type of objective evidence necessary to support the subjective statements of several plaintiffs. In addition, there was no evidence that the risk of accidents increased after 1982.

Increased noise or risk of accidents are not elements of a federal taking of an avigation easement. Unless the noise or risk of accidents is the result of a physical intrusion into plaintiffs' air space.

Objective and credible evidence of the elements of a taking of an avigation easement could easily have been introduced but for reasons unknown to the court, counsel did not do so.

Most significantly, there was absolutely no evidence of a taking of an avigation easement by the United States within the statute of limitations.

Trial Trans. at 565–66. This failure can be attributed to a negligent investigation of the facts.

Sanctions are justified under Rule 11 because Austin's assurances of evidence to prove plaintiffs' claim can be linked to his pretrial, Appendix G filings. *Paese v. New York Seven–Up Bottling Co.,* 158 F.R.D. 34, 38 (S.D.N.Y.1994). Promised evidence was supplied in Plaintiffs' Memorandum of Contentions of Fact ("Mem."), filed March 27, 1995, with an Appendix of Proposed Findings of Fact ("FF"). For example, Austin promised to prove claims of (1) ever increasing overflights, crash hazards and noise (*see* Mem. ¶ 1, 8, 18, 20–21, 24–28; FF 2, 7, 10, 11, 14, 19–20, 28–29); (2) arrival of the C–5A aircraft in 1984 (*see* Mem. ¶ 20; FF 19–20); and (3) the Air Force's involvement in edu-

cating and informing the public of excessive noise and crash dangers, thus creating fear and apprehension in residents (*see* Mem. ¶ 1, 27–28; FF 24–26, 28–29). Austin presented no expert witness to discuss increasing overflights, crash hazards or noise levels, nor did the court accept the lay witnesses' unsupported beliefs, from memory, as to these factors. Austin ignored the fact that numerous C–5As were present at KAFB before 1984. *See* Pls.' Ex. 8 at III–4; *see also* Def.'s Comments on Counsel for Pls.' Statement in Resp. to the Ct.'s Sept. 27, 1995 Order to Show Cause, App., Ex. 2 at 16–19. Austin was only able to prove that the Air Force attended some meetings sponsored by the City of San Antonio addressing the proposed zoning ordinances, not that it exerted pressure on the City. Even if plaintiffs could prove the latter, this court does not have jurisdiction in a claim sounding in tort, a criteria about which Austin knew or should have known had he conducted a reasonable inquiry into the law. These misrepresentations in and of themselves call for sanctions.

Austin claimed that the Memorandum was only a contention and that because the court dealt with some of the matters therein during the pretrial conference, he should not be sanctioned for "promises" which were only contentions. This argument is futile. Although pretrial memoranda are contentions, attorneys are still bound to act reasonably and to only "contend" facts and law which are supportable. Memoranda should not be used to waste courts' and opposing parties' time and energy addressing areas lacking any support. The lack of evidence at trial demonstrates that the contentions were *not* supportable. In *Persyn II*, the court clearly noted Austin's failure to present colorable claims with factual bases and legal arguments to support them at trial:

> The presentation of these thirty-four takings claims was a farce. The claims followed no discernable theory but rather were an amalgamation of rambling, irrelevant testimony completely unsupported by objective evidence. Despite being warned time and again by the court during the pre-trial phase of the case, plaintiffs' counsel insisted upon adhering to a scenario bearing no relation to the actual facts that

the court was able to find from its analysis of the entire record. Seven plaintiffs, three of whom lacked personal knowledge of events before July 15, 1982, testified as witnesses. Although plaintiffs were informed that the statute of limitations was an important factor in this case, counsel did not produce a single piece of reliable documentary evidence dated after 1981.

*Persyn II,* 34 Fed.Cl. at 193 (footnote omitted). Austin's signing and filing of the Memorandum and Proposed Findings of Fact was not objectively reasonable and clearly violated Rule 11.

In response to the court's Second Order, Austin only addressed his *Dickinson* stabilization theory. Resp. 2 at 7–11. The court, however, did not single this theory out as sanctionable. The court's concern dealt with his lack of factual support for plaintiffs' claim. Throughout Austin's response to the Second Order, he relied on allegations of fact not supported by the record. For example, Austin incorrectly suggested that Terry Britton was an expert witness at trial. *See* Resp. 2 at 5. Although he was listed as an expert by Austin, Britton was not qualified as an expert at trial. *Persyn II,* 34 Fed.Cl. at 193.

Austin urged that he should not be sanctioned because the evidence presented at trial was "indisputable." He claimed that the calculations computed by his expert, Gholson, should have been accepted. However, after observing Gholson under oath and listening to his testimony, the court was convinced that he lacked any credibility:

> As their sole expert witness, plaintiffs called Mr. Kirby Gholson. Mr. Gholson claimed a background in real estate even though he received his certificate as a state appraiser *thirty minutes* before he was called to the stand. Gholson claimed some undefined involvement in preparing several of the exhibits offered at trial but totally lacked the knowledge or expertise necessary to give the exhibits relevance. Gholson had prepared an 'appraisal' of the subject properties, and even offered testimony purporting to be relevant to the height of aircraft flying over the APZs. Defendant objected to the identification of Gholson as

an expert witness, but the court reserved ruling on whether Gholson was qualified.

After observing Mr. Gholson's demeanor and listening to his testimony on direct and cross examination, the court was forced to conclude that Mr. Gholson was completely lacking in professional objectivity, integrity or competence. His testimony and report were filled with illogical statements, outright errors, arbitrary decisions and lack of reasonable judgments. Despite the fact that Mr. Gholson testified under oath, the court also identified several outright falsifications in his testimony. Although Mr. Gholson knew the terminology of an expert, the court concluded that he was no more an expert on San Antonio land value, than was the court. In light of the glaring inadequacies in Gholson's report, and the fact that he had been deposed twice before trial, the court cannot find that plaintiffs' counsel was unaware, at the time this witness took the stand, that Gholson's entire testimony would be made up of whole cloth.

*Persyn II,* 34 Fed.Cl. at 193 (emphasis in original).

Austin had taken two depositions of Gholson and was well aware of the problems with his testimony. Gholson arbitrarily chose a taking date. He claimed that plaintiffs' properties were not marketable after the alleged taking despite the fact that two sales had occurred. He used a computer program about which he had little or no knowledge to create the "values" of the properties. This lack of competency caused distortions in the facts and produced grossly inaccurate adjustments and values. Gholson did not use any variables such as noise, crash hazard or overflights in determining his "values" for the properties. *See* Def.'s Comments on Counsel for Pls.' Statement in Resp. to the Ct.'s Sept. 27, 1995 Order to Show Cause, App., Ex. 3 at 23, 84–85, 134, 161–62; Ex. 4 at 26–27, 52–54, 74–75. His appraisals of the properties were marked by picking numbers out of the air for his calculations. For example, he used a vacant land sale of 4.3 acres to estimate the value of plaintiffs' properties which range from 0.5 to 1.2 acres. He scaled down the value sixty-seven percent even though in this case, smaller lands were superior to larger ones. With respect to properties which were similar in size to the 4.3 acre sale, Gholson scaled down the value by some sixty-seven percent for no identifiable reason. *See* Trial Trans. at 531–33. In making his valuations for one of the properties, he did not take into consideration that it was landlocked and was described as a "water tank into perpetuity" in the pleadings. Moreover, Gholson testified that his estimate of twenty percent property damages caused by the City ordinance was only a guess! *See* Trial Trans. at 534–38. Gholson's testimony was further not believable by the fact that when he was told that one of his estimates for a comparable property was off by approximately three thousand dollars, he simply stated that the different price would have no effect on the valuations of the twenty properties for which he used that comparable property.

All of the properties were located, at least in part, in accident potential zones. Gholson, however, only rated some of the properties inferior to others based on this factor. There was no legitimate reason to treat one comparable sale differently than the others for this quality. For seven of the properties, Gholson used a certain comparable sale. He adjusted the sale downward twenty-seven percent for "motivation" for some of the seven properties but not for the others. This made no sense because the comparable sale was either affected by "motivation" or it was not; it could not be both at once. The most disturbing part of Gholson's testimony was his confession that when inspecting a property, he first guessed at a value in his head and then looked for comparable data to substantiate his initial "feeling." *See* Trial Trans. at 489. Plaintiffs needed a sound, supportable estimate in valuing the properties in question. Austin's inability to prove this with his only expert witness demonstrates his failure to conduct a reasonable inquiry into the facts. Austin had a duty to ascertain his witnesses' testimony and its accuracy. *See Curtis v. Meijer, Inc.,* 1987 WL 45380, at *2 (E.D.Mich. Apr. 28, 1987). In not doing so, Austin failed in his duty to present legally tenable arguments, well-grounded in fact.

While the pretrial filings provide grounds for sanctions under RCFC 11, Austin's flagrant disregard for judicial integrity provides grounds for sanctions under the court's inherent powers. The court questions Austin's integrity because he knew about the mistakes, misrepresentations, and falsifications in Gholson's testimony. A court must assess counsel's credibility to determine whether a paper was supported by fact and law "to the best of the signer's knowledge, information, and belief." *Cooter & Gell*, 496 U.S. at 402, 110 S.Ct. at 2459. The court did so. Because the evidence consisted only of argument and conclusory statements rather than facts, grounds for sanctions are justified. Austin's actions constituted an abuse of the judicial process, waste of judicial resources and creation of substantial expenses for all parties. *See Paese*, 158 F.R.D. at 38. In light of the lack of evidence at trial, which was discoverable, and Austin's failure to justify his actions, the court finds sanctions against Austin appropriate.

### D. Austin Acted in Bad Faith and in an Effort to Frustrate the Court During Trial.

Austin's misrepresentations of the facts and failure to follow the court's instructions justifies sanctions under the court's inherent powers. First, at the pretrial conference, in an attempt to determine whether the rural properties were in congested or uncongested areas, Austin asserted that they were in congested areas. Pretrial Trans. at 10–11. However, after completing the site visit which became necessary because of the parties' disagreement, it was clear that the open fields and sparse constructions can *only* be described as being in uncongested areas. Second, the court had specifically identified a number of issues which Austin was required to address at trial in order to prove a taking, including the effect on the use and enjoyment of plaintiffs' land and that the taking occurred within six years of filing the complaint. Pretrial Trans. at 71; *see also Persyn I*, 32 Fed.Cl. at 584. Austin offered no credible evidence addressing these issues. *See* Trial Trans. at 565–66. His failure to adhere to the court's instructions and his effort to frustrate the court support an award of sanctions against him pursuant to the court's inherent powers.

### E. Austin May also be Liable Under 28 U.S.C. § 1927 for Multiplying the Litigation.

Section 1927 provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.

28 U.S.C. § 1927 (1994). Most of what occurred at trial was a waste of time and resources. Although intent may not be a requirement for imposing sanctions under section 1927, Austin's actions at trial nevertheless are indicative of his bad faith in litigating this case. *Compare State Indus.*, 948 F.2d at 1581 n. 9 (noting that intent is not a requirement for imposing sanctions under section 1927) *with United States v. International Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir.1991); *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830 (9th Cir.1986).

For example, during Britton's testimony, defense counsel asked the witness about his answers to some of defendant's interrogatories. Question 49 asked: "When does each plaintiff allege that the value of his property was first diminished by over-flights?" Trial Trans. at 303. Britton answered: "In mid-1984 when the arrival of the C–5A aircraft began and it became apparent that the increasing over-flights were continuous and would become more severe with the arrival of additional C–5As. The amount of the diminution is measured only as an unseverable component part of the entire taking." Trial Trans. at 303. In response to whether these words were the witness' or Austin's, Britton strongly attested that they were his words—that no one supplied the words to him. Trial Trans. at 303. Defense counsel noted that the same exact answer was given by another plaintiff, A.C. Lopez. In response to why the exact same words were used and whether his

attorney, Austin, supplied the language, Britton unbelievably stated: "Apparently since we had the same attorney and the same negotiations and the same thoughts on the case.... I don't think that [Austin] supplied [the language] specifically verbatim." Trial Trans. at 305.

Defense counsel then wished to question the thirty-five sets of interrogatories in which each plaintiff had used the exact same answer to the question at issue. Austin objected: "If he wants to produce the 35 interrogatories, let him do so." Trail Trans. at 305. The court overruled his objection, finding Austin's request would unnecessarily lengthen the proceedings by requiring defense counsel to admit each statement with corroborating authentication. Furthermore, the court questioned whether Austin's objection suggested that the answers to the interrogatories were different which in fact they were not. Britton's apparent misrepresentation and Austin's apparent knowledge of it demonstrates the latter's bad faith in litigating this case. Pursuant to section 1927 prohibiting the multiplication of litigation, this action may be sanctionable. The court need not determine this, however, due to Austin's other actions.

## V. The Propriety of Sanctions

This case demands the imposition of judicial sanctions. The pretrial and trial proceedings in this matter were marked by Austin's misrepresentations of facts and law. This can only be attributed to the failure of his affirmative duty to reasonably investigate the facts and law to support plaintiffs' claims and to an attempt to consciously mislead the court. These actions merit sanctions under RCFC 11 and the court's inherent powers. The court recognizes that sanctions must be viewed in light of an attorney's duty to represent a client zealously and not chill vigorous advocacy. *Cooter & Gell,* 496 U.S. at 393, 110 S.Ct. at 2454. The court encourages the growth of legal theories through creative persuasion, but "such creativity has its bounds." *Westmoreland,* 770 F.2d at 1180. There are minimum standards such that all conduct cannot be excused, including misleading the court and asserting claims based

on nothing more than wishful thinking. Austin submitted unintelligible briefs with unsupported theories. The court recognizes that Rule 11 is not a remedy for sloppy brief writing or inadequate litigation skills; however, the filing of irrelevant and illogical arguments based on factual misrepresentations and false premises requires sanctions. *Romala Corp. v. United States,* 927 F.2d 1219, 1224 (Fed.Cir.1991).

In defending his claim against sanctions, Austin urged that the only writing specified by the court to be sanctionable was plaintiffs' summary judgment response. He argued that because plaintiffs prevailed in part on that motion, any fees, expenses, or costs occurring before the filing of that response are not allowable under RCFC 11. Austin's argument is nothing but another example of his attempt to obscure the facts and his lack of knowledge of the law. First, it is of no consequence that only part of a document is frivolous; Austin's actions alone justify sanctions. *See Townsend v. Holman Consulting Corp.,* 929 F.2d 1358, 1364 (9th Cir.1990); *Perry,* 918 F.2d at 934–35. Austin is not insulated from sanctions for his objection to a summary judgment motion, where all facts were construed in plaintiffs' favor, if the court later finds the claims were baseless in factual or legal support. *See Lemaster v. United States,* 891 F.2d 115, 121 (6th Cir. 1989); *Paese,* 158 F.R.D. at 38 n. 4. Second, Austin is not only being sanctioned pursuant to RCFC 11 for his conduct in signing and filing the summary judgment response; he is also being sanctioned pursuant to the court's inherent powers. Austin acted in bad faith when he pursued plaintiffs' claims from the filing of the complaint in this court. Trial in this case demonstrated that Austin never did have adequate facts or legal evidence to support plaintiffs' claims. The court finds that Austin knew or should have known pursuant to a reasonable inquiry into the facts and law that the claims were not sustainable. Yet, he chose to waste the time of the court and the United States in raising the claims against the government. Where substantial expense is incurred in a case which should not have reached trial but did so, sanctions are warranted. A court cannot jeopardize judicial

integrity by permitting groundless pleadings. *Westmoreland*, 770 F.2d at 1180.

## CONCLUSION

Accordingly, Austin shall be sanctioned under RCFC 11 and the court's inherent powers. Defendant is awarded all reasonable expenses, costs, and attorney's fees incurred by the United States in defending against the violations discussed herein. Defendant shall file within thirty (30) days of this Order a certified statement of charges for all expenses, costs, and attorney's fees directly attributable to the defense of the government's position against the areas addressed by this Order. This statement shall be properly supported by affidavit and time records, etc. Plaintiffs' counsel may file a response to the statement within thirty (30) days from the filing of defendant's statement. No extensions of time shall be granted.

**IT IS SO ORDERED.**